**In re SHEFFEY.**

[Cite as *In re Sheffey,* 167 Ohio App.3d 141, 2006-Ohio-619.]

Court of Appeals of Ohio,
Eleventh District, Ashtabula County.

No. 2005–A–0063.

Decided Feb. 10, 2006.

Phillip L. Heasley, Ashtabula County Public Defender, for appellant, Latasha Sheffey.

Laura M. DiGiacomo, for appellee, Ashtabula County Children Services Board.

Carol G. Grasgreen, guardian ad litem.

COLLEEN M. O'TOOLE, Judge.

{¶ 1} This is an appeal from the Ashtabula County Court of Common Pleas, Juvenile Division, terminating a mother's parental rights and granting permanent

custody of her newborn child to appellee, Ashtabula County Children Services Board ("ACCSB"). Because we hold that the trial court failed to follow the basic due-process notice provisions of R.C. 2151.414 and the basic constitutional due-process requirements of both the Ohio and United States Constitutions, we reverse the decision of the trial court.

{¶ 2} By way of background, Mariah was born on January 13, 2005, to appellant, Latasha Sheffey ("mother"), who at the time of Mariah's birth was concluding a one-year prison sentence for theft, with a release date of April 13, 2005. On January 14, 2005, the ACCSB requested and received an ex parte emergency order for temporary custody. On January 18, 2005, ACCSB filed a verified complaint for dependency and neglect, pursuant to R.C. 2151.04(C) and 2151.03(A)(2); requested a disposition of permanent custody, pursuant to R.C. 2151.414(E)(11) and 2151.414(E)(16); and alleged that the mother had had her parental rights terminated with respect to Mariah's siblings in 2003, pursuant to R.C. 2151.353, 2151.414, and 2151.415. ACCSB instructed the court to serve the mother at her known location, which was stated in the second paragraph of the complaint, alleging that she was incarcerated at the Franklin Pre–Release Center, a division of the Ohio prison system.

{¶ 3} On January 18, 2005, a shelter-care judgment entry was issued. Although the judgment entry stated that notice was served upon appellant, there is nothing in the record to support that finding. The complaint also alleged that there were three potential fathers of Mariah. Devere Deyere and Murphy West were served by certified mail on February 9, 2005, and February 11, 2005, respectively. Thomas Johnson was not served until March 23, 2005, by publication, after the initial adjudication of the neglect proceeding. On February 11, 2005, ACCSB filed a case plan that was approved by the court.

{¶ 4} The case plan did not include a reunification plan for the mother and provided all resources and services to the foster parents consistent with the plan to implement permanent custody and adoption.

{¶ 5} The clerk did not serve the mother with a copy of the complaint, but did serve her with a copy of the judgment of the trial court, granting the continuance of the dependency and neglect hearing scheduled for February 4, 2005, until March 8, 2005. However, the entry does not indicate the subject matter of the hearing. The records show that a hearing was held on March 8, 2005, on the issues of neglect and dependency with an adjudication of the same.

{¶ 6} The trial court failed to comply with the mandates of R.C. 2151.314(A). The mother did not attend the hearing as she was neither transported from the location of her incarceration nor provided with any alternative method for participating in the hearing. She was not appointed counsel, nor was she given notice of her rights and the allegations she would be facing. The public defender

was appointed as the mother's representative subsequent to the March 8, 2005 hearing on neglect and dependency.

{¶ 7} The court did serve the mother with a copy of the order adjudicating the child dependent and neglected. On March 11, 2005, the public defender filed a motion to convey the mother to the hearing. On March 25, 2005, the public defender filed a continuance for the permanent-custody hearing, citing an inability to provide evidence in the mother's defense. The court denied that motion "due to statutory time constrictions." On April 6, 2005, the court held the permanent-custody hearing, which was scheduled for one hour. The mother was conveyed from prison, and her attorney was present. The mother took the stand. Two workers from ACCSB and the foster mother testified on behalf of ACCSB. The parties stipulated to the prior findings of fact and adjudication of permanent custody of the mother's three other children on September 5, 2003. Mariah was in the emergency temporary custody of ACCSB for 82 days prior to the permanent-custody hearing.

{¶ 8} Following the hearing for permanent custody, the court terminated the mother's parental rights and placed Mariah in ACCSB's custody. From this judgment, the mother has filed a timely appeal and sets forth the following assignment of error:

{¶ 9} "[1.] Children's Services failed to prove by clear and convincing evidence that parental reunification could not occur, and that an award of permanent custody was in the subject child's best interests, and the court therefore erred in awarding permanent custody of the subject child to Children's Services."

{¶ 10} First we must note that the Ohio Supreme Court has defined the importance and deference courts must give to proceedings that permit a child welfare agency to assume permanent custody of a child. The termination of parental rights is "the family law equivalent of the death penalty." *In re Phillips,* 11th Dist. No. 2005–A–0020, 2005-Ohio-3774, 2005 WL 1714181, at ¶ 22, citing *In re Hoffman,* 97 Ohio St.3d 92, 2002-Ohio-5368, 776 N.E.2d 485, at ¶ 14. See, also, *In re Murray* (1990), 52 Ohio St.3d 155, 157, 556 N.E.2d 1169 (stating that a parent has a "fundamental liberty interest" in the care, custody, and management of his or her child and an "essential" and "basic civil right" to raise his or her children).

■ {¶ 11} It is evident from the record that ACCSB requested a disposition of permanent custody due to the fact that in September 2003, the mother had her other three children placed in the permanent custody of ACCSB. There is no dispute in this case as to the facts. There is no dispute that ACCSB did not attempt to reunify the child with the mother. There was no prior finding regarding the mother's unsuitability as a parent for Mariah prior to the filing for

permanent custody. The court adjudicated Mariah as neglected 49 days after filing for permanent custody. The magistrate did not render any findings of fact and conclusions of law in regard to her finding of neglect. The record does not include any evidence that the mother was served with notice of the complaint or of the hearing on neglect and dependency. She was not given notice containing a full explanation as required by R.C. 2151.353(B), nor was she appointed counsel for the hearing on neglect and dependency. Juv.R. 4.

{¶ 12} The mother was not transported to the hearing on neglect and dependency. She did not appear until she was finally transported by the sheriff on the day of the permanent-custody proceeding. Appellant had a statutory right to be present at and/or participate in the hearing.[1] Her failure to attend the hearing was not voluntary, but based upon her incarceration. The court, as well as ACCSB, was aware of her location. She was not read any of her rights or provided notice of those rights. The court denied the mother's motion to continue the hearing for permanent custody to allow the public defender to gather evidence. The court denied this motion on the erroneous basis of a time limitation.[2]

{¶ 13} A trial court should only grant permanent custody as the initial disposition in extreme situations where reunification is not possible. *In re Crosten* (Mar. 21, 1996), 4th Dist. No. 95CA1692, at 15, 1996 WL 130937; *In re Smart* (1984), 21 Ohio App.3d 31, 35, 21 OBR 33, 486 N.E.2d 147.

---

1. A parent has a right to be present at a hearing. Cf. *In re Thompson* (Apr. 26, 2001), 10th Dist. Nos. 00AP–1358 and 00AP–1359, 2001 WL 424044, at 19. As it pertains to termination-of-parental-rights cases, a trial court's failure to comply with Juv.R. 29(D) has been found to constitute plain error. *In re Elliott*, 4th Dist. Nos. 03CA65 and 03CA66, 2004-Ohio-2770, 2004 WL 1189475, at ¶ 15; *In re Aldridge*, 4th Dist. No. 02CA2661, 2002-Ohio-5988, 2002 WL 31439807, at ¶ 16. In lieu of appearance, the court may make other accommodations so that the parent can witness and participate in the hearing, guaranteeing the parent's rights to due process, confrontation of witnesses, and participation in the hearing. See, e.g., *Jordan v. Ivanchak* (Dec. 15, 1989), 11th Dist. No. 88–T–4102, 1989 WL 152691, at 6–9.

2. {¶ a} R.C. 2151.414(A)(2), provides: "The court shall hold the hearing scheduled pursuant to division (A)(1) of this section not later than one hundred twenty days after the agency files the motion for permanent custody, except that, for good cause shown, the court may continue the hearing for a reasonable period of time beyond the one-hundred-twenty-day deadline. The court shall issue an order that grants, denies, or otherwise disposes of the motion for permanent custody, and journalize the order, not later than two hundred days after the agency files the motion.
   {¶ b} " * * *
   {¶ c} "The failure of the court to comply with the time periods set forth in division (A)(2) of this section does not affect the authority of the court to issue any order under this chapter and does not provide any basis for attacking the jurisdiction of the court or the validity of any order of the court."

{¶ 14} ACCSB in this matter filed its initial and only complaint for neglect and dependency and requested permanent custody three days after the child was born pursuant to R.C. 2151.353(A).

{¶ 15} R.C. 2151.353(A)(4) provides that if a child is adjudicated abused, neglected, or dependent, the court may commit the child to the permanent custody of a children services agency if the court determines, in accordance with R.C. 2151.414(E) that the child cannot be placed with one of the child's parents within a reasonable time, or should not be placed with either parent and (2) determines in accordance with R.C. 2151.414(D) that the permanent commitment is in the best interest of the child.

{¶ 16} After the adjudication of neglect, a juvenile court may terminate parental rights and award permanent custody of a child to the proper agency if it finds by clear and convincing evidence that the following prongs of the permanent custody statute are satisfied: (1) that the child is abandoned, orphaned, has been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period, or that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent, based on an analysis under R.C. 2151.414(E), and (2) that the grant of permanent custody to the agency is in the best interest of the child, based on an analysis under R.C. 2151.414(D). R.C. 2151.414(B)(1); 2151.414(B)(2).

{¶ 17} R.C. 2151.414(E) states:

{¶ 18} "In determining at a hearing held pursuant to division (A) of this section * * * whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 [2151.35.3] of the Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent."

{¶ 19} Pursuant to R.C. 2151.414(E)(11), if the court finds that a parent has had his or her parental rights involuntarily terminated pursuant to R.C. 2151.353 or 2151.415 with respect to a sibling of the child at issue, it must, or "shall," find that the child cannot be returned to the parents. In the instant case, the mother's counsel stipulated that her parental rights had been terminated regarding three of Mariah's siblings, thus meeting the first part of the test set forth above.

■■ {¶ 20} However, a prior adjudication of permanent custody does not result in a de facto termination of parental rights. To allow that result would

amount to a violation of a parent's basic rights to raise his or her children. Parents hold a well-established fundamental liberty interest in the care, custody, and management of their children. *Santosky v. Kramer* (1982), 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599.

{¶ 21} Accordingly, when the state initiates a permanent-custody proceeding, parents must be provided with fundamentally fair procedures in accordance with the due process provisions under the Fourteenth Amendment to the United States Constitution and Section 16, Article I of the Ohio Constitution.

{¶ 22} A parent's right to raise his or her children is an "essential" and "basic" civil right. *Murray*, 52 Ohio St.3d at 157, 556 N.E.2d 1169. The fundamental liberty interest of natural parents in the care, custody, and management of their child does not evaporate simply because they have not been model parents or have lost temporary custody of their child to the state. *Santosky*, 455 U.S. at 753, 102 S.Ct. 1388, 71 L.Ed.2d 599. With this in mind, it is evident that a parent maintains those rights as to each and every child born to him or her, regardless of order of birth or prior acts.

{¶ 23} It is clear from the record that the trial court neither adhered to nor complied with the basic procedural safeguards mandated within the permanent custody statute. By denying the mother proper notice, a recitation of her rights, and proper participation in the proceedings, as well as by denying her a continuance and failing to appoint her counsel during the hearing for neglect and dependency, the trial court did not comply with the basic constitutional requirements set forth in both the Ohio and United States Constitutions.

{¶ 24} We hereby reverse the decision of the trial court as to the complaint for neglect and dependency and the adjudication of permanent custody and remand this matter to the trial court to conduct a new hearing on the complaint in accordance with the mandates of procedural due process and R.C. Chapter 2151, in accordance with this opinion.

Judgment accordingly.

FORD, P.J., and O'NEILL, J., concur.