OPINION
{¶ 1} Appellants, Mother-Rayann Craig and Father-Allan Craig, filed this joint appeal from the judgment entered in the Tuscarawas County Court of Common Pleas, Juvenile Court Division, which terminated all parental rights, privileges and responsibilities of the parents, with regard to their minor child, Lakyia Craig, and ordered that permanent custody of the minor child be granted to the Tuscarawas County Department of Job and Family Services, (hereinafter, "TCJFS").
 {¶ 2} This appeal is expedited, and is being considered pursuant to App.R.11.2(C). The relevant facts leading to this appeal are as follows:
 STATEMENT OF THE FACTS AND CASE {¶ 3} This appeal pertains to the permanent custody disposition of Lakyia Craig, whose date of birth is December 23, 2006. Appellant, Rayann Craig, is the natural mother of the child. Allan Craig is the natural father.
 {¶ 4} The minor child has five siblings who have previously been ordered into the permanent custody of TCJFS. The siblings are Jazmine Loyd Irwin, whose date of birth is January 21, 1999, George Irwin, whose date of birth is February 15, 2001, Rebecca Craig, whose date of birth is July 29, 2002, Allan Craig, Jr., whose date of birth is July 6, 2003, and Lakota Craig, whose date of birth is, December 5, 2005. Rayann Craig is the natural mother of all the siblings. Allan Craig is the natural father of Rebecca, Allan Jr., and Lakota.
 {¶ 5} TCJFS has been involved with this family since 2002. On or about July 27, 2004, in Tuscarawas County Court of Common Pleas, Juvenile Division Case Number 04JN00503, TCJFS filed a complaint for abuse, neglect and dependency for Jazmine, *Page 3 
George, Rebecca and Allan Jr. The concerns which led to the filing included domestic violence, allegations of sexual abuse, failure to provide for the children's basic needs and an unsafe home environment.
 {¶ 6} On October 13, 2004, the four siblings were adjudicated to be neglected and dependent. Both appellants, Rayann and Allan Craig, were provided with a case plan for reunification. The case plan required them to complete a psychological evaluation and any recommended treatment, participate in parent education classes, and maintain a stable and safe home environment. Allan Craig was further ordered to complete anger management treatment and confrontative therapy. The appellants failed to satisfactorily complete any part of their case plan.
 {¶ 7} During the pendency of the matter involving the four siblings, Barbara Jean Hunter of Personal Family Counseling's "Help Me Grow" program, made visits to the Craig home. Ms. Hunter expressed ongoing concerns about the condition of the home, the inappropriate discipline of the children and the mental health issues of the parents.[1] After a hearing, on October 31, 2005, the Tuscarawas County Court of Common Pleas granted permanent custody of Jazmine, George, Rebecca and Allen Jr. to TCJFS.
 {¶ 8} In the permanent custody decision the trial court found that the Craig family history was "fraught with examples of constant neglect". The home was "inadequate and filthy" and the children were "underweight and otherwise physically neglected". The court further stated that, "The general physical handling of these small children was rough and inappropriate", and that there had been allegations of sexual *Page 4 
abuse.[2] Additionally the trial court found that the parents lacked any insight into the difficulties that resulted in the removal of the children. The trial court further found Allan Craig to be violent and assaultive, as well as a person, of whom, the children were very fearful. The trial court found Rayann Craig to be intellectually limited and struggling with parenting deficits.[3]
 {¶ 9} After the grant of permanent custody, on December 5, 2005, Lakota Lee Craig was born. TCJFS filed a dependency and permanent custody complaint, and the child was immediately placed in the agency's temporary custody in Tuscarawas County Court of Common Pleas, Juvenile Division, Case Number 05JN00688. The trial court further held that pursuant to R.C. 2151.419(A)(2)(e) TCJFS was not required to expend reasonable efforts to reunify the child with his parents. On February 21, 2006, the trial court found the child to be dependent and ordered the child to be placed into the permanent custody of TCJFS.
 {¶ 10} Thereafter, less than a year later, on December 23, 2006, Lakyia Craig, (the child in the matter on appeal before this Court), was born. On December 24, 2006, the child was placed in the emergency temporary custody of TCJFS. On December 27, 2006, TCJFS filed a complaint seeking a dependency adjudication pursuant to R.C. 2151.04 and requesting a permanent custody disposition pursuant to 2151.353(A)(4).
 {¶ 11} On January 23, 2007, the trial court held the adjudication hearing. At the hearing the ongoing caseworker, Betsy Wanosik, testified that she had been involved *Page 5 
with this family since 2002. She stated that she had been involved with the two prior cases involving the minor child's five siblings.[4] She testified that there have been prior concerns of physical and sexual abuse as well as home safety concerns. She testified that in the initial case, appellants failed to complete any portion of their case plan. Specifically she testified that Rayann completed a psychological evaluation but only attended two counseling sessions. She stated that Allan was belligerent and did not participate in any case plan services. She stated that she had signed the parents up for parenting classes three times, but they had never attended. Essentially, she stated, that in over a one year period of time, the parents had refused to take advantage of any services. She further stated that she had not been provided with any information that the parents had made efforts to pursue services since the five siblings had been placed in permanent custody. The case worker stated that because none of the prior concerns had been alleviated, there were ongoing concerns that Lakyia would be subjected to abuse and neglect if he were returned to the parent's home. On January 24, 2007, by judgment entry, the trial court found the child to be dependent pursuant to R.C. 2151.04.
 {¶ 12} On February 9, 2007, TCJFS moved the Court to remove the case plan requirement that reasonable efforts be expended to reunify. Specifically TCJFS argued that pursuant to R.C. 2151.419(A)(2)(e) reasonable efforts were not required since the parties' parental rights to five other siblings had been previously terminated in Case Numbers 04JN00503 and 05JN00688.
 {¶ 13} On February 20, 2007, the trial court heard the dispositional phase of the dependency complaint, which had requested permanent custody as a disposition. Prior *Page 6 
to the presentation of evidence the trial court held that no reasonable efforts needed to be expended to reunify the family. The trial court also admitted, upon stipulation of the parties, certified copies of the trial court's permanent custody orders in Case Numbers 04JN00503 and 05JN00688.
 {¶ 14} Ongoing Caseworker, Betsy Wanosik, again testified that she had been involved with the family in the prior permanent custody cases as well as the current matter before the court. The caseworker reiterated that in the prior case involving Jazmine, Rebecca, George and Allan Jr., appellants had been provided with a case plan and an opportunity to reunify. She stated that appellants failed to complete any of the case plan services and were uncooperative in the agencies attempt to reunify. She stated that the results of the TCJFS investigation in the prior case had found sexual abuse by Allan Craig to be "indicated". She further testified that Lakyia had been placed with a sibling in a foster home and that the foster parents had expressed a desire to adopt the child. She stated that after exhaustive efforts, no relative or other appropriate placement had been available for any of the children. She further stated that it was her opinion that permanent custody was in the child's best interest.
 {¶ 15} On direct examination appellant-Rayann Craig testified that she had completed a psychological evaluation, and had, within the last month, begun counseling at Community Mental Health. She also admitted that she had not completed parenting classes but stated that she had recently contacted the caseworker to inquire about participation. (Transcript of Permanent Custody Proceeding at Pages 80 through 84)
 {¶ 16} Appellant-Allan Craig testified that he had previously been presented with a case plan for reunification in the prior case involving the four siblings. He stated that *Page 7 
he had attended some parenting classes through "Help me Grow". He testified that he understood that long-term counseling had been recommended but further stated that he didn't know "how long, long-term is" and had just started counseling two weeks prior to the dispositional hearing. In regard to anger management he stated that he had discussed anger management with his pastor on two separate occasions and was currently preparing for the tough man competition to curb his anger. On cross-examination he admitted that in the previous case he had not done "whatever it took" to reunify with his children. (Transcript of Permanent Custody Proceeding at Pages 85 through 92).
 {¶ 17} On February 20, 2007, the attorney guardian ad litem filed a report. In the report the guardian stated that a grant of permanent custody to TCJFS was in the child's best interest.
 {¶ 18} On February 23, 2007, via judgment entry, the trial court granted permanent custody of Lakyia Craig to the Tuscarawas County Department of Children's Services. It is from this decision that appellants, Rayann Craig and Allan Craig, now seek to appeal assigning the following error for review:
 {¶ 19} "I. THE TRIAL COURT'S DECISION IN FINDING LAKYIA CRAIG TO BE A DEPENDENT CHILD PURSUANT TO ORC 2151.04(D) AND THE DECISION TO TERMINATE THE APPELLANTS' PARENTAL RIGHTS AND GRANT PERMANENT CUSTODY TO TUSCARAWAS COUNTY JOB AND FAMILY SERVICES IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE PURSUANT TO R.C. 2151.414 AND [THE COURT] ERRED IN DETERMINING THAT JOB AND FAMILY SERVICES WAS NOT *Page 8 
REQUIRED TO EXPEND REASONABLE EFFORTS AT REUNIFICATION BEFORE GRANTING PERMANENT CUSTODY."
 I {¶ 20} In the Assignment of Error appellants argue that the trial court erred by making a dependency finding, removing the reasonable efforts requirement and granting permanent custody of Lakyia Craig to the Tuscarawas County Department of Job and Family Services. We disagree.
 {¶ 21} "[T]he right to raise a child is an `essential' and `basic' civil right." In re Murray (1990), 52 Ohio St.3d 155, 157,556 N.E.2d 1169, quoting Stanley v. Illinois (1972), 405 U.S. 645, 92 S.Ct. 1208,31 L.Ed.2d 551. A parent's interest in the care, custody and management of his or her child is "fundamental." Id.; Santosky v. Kramer (1982),455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599. The permanent termination of a parent's rights has been described as, "* * * the family law equivalent to the death penalty in a criminal case." In reSmith (1991), 77 Ohio App.3d 1, 16, 601 N.E.2d 45. Therefore, parents "must be afforded every procedural and substantive protection the law allows." Id.
 {¶ 22} An agency may request permanent custody of a child as part of its original abuse, neglect, or dependency complaint. R.C.2151.353(A)(4). A trial court should only grant permanent custody as the initial disposition in extreme situations where reunification is not possible. In re Croston (March 21, 1996), 4th Dist. App. No. 95CA1692, unreported; In re Smart (1984), 21 Ohio App. 3d 31, 35,486 N.E.2d 147.
 {¶ 23} Proceedings involving the termination of parental rights must be bifurcated into separate adjudicatory and dispositional hearings. R.C. 2151.35, Juv.R. 29 and 34. *Page 9 
See also, In re Baby Girl Baxter (1985), 17 Ohio St.3d 229,479 N.E.2d 257. In the adjudicatory phase a child must be found to be abused, neglected or dependent.
 {¶ 24} In pertinent part, R.C. 2151.04(D) defines a dependent child as any child to which both of the following apply: (1) "The child is residing in a household in which a parent, guardian, custodian or other member of the household committed an act that was the basis for an adjudication that a sibling of the child or any other child who resides in the household is an abused, neglected or dependent child; and (2) who "[B]ecause of the circumstances surrounding the abuse, neglect or dependency of the sibling or other child and the other conditions in the household of the child, the child is in danger of being abused or neglected by the parent, guardian, custodian, or member of the household." R.C. 2151.04(D)(1) and (2).
 {¶ 25} "Ohio courts have held that newborn infants can be dependent before they have ever been released into their parents' custody." In rePieper Children (1993), 85 Ohio App.3d 318, 325, 619 N.E.2d 1059, See also, In re Bishop (1987), 36 Ohio App.3d 123, 124, 521 N.E.2d 838. Essentially, a prospective finding of dependency is appropriate where a child has not been in the custody of the parents but circumstances demonstrate that to allow the parents to have custody of the child would threaten the child's health and safety. "`A juvenile court should not be forced to experiment with the health and safety of a newborn baby where the state can show, by clear and convincing evidence, that placing the child in such an environment would be threatening to the health and safety of that child.'" In re Pieper Children (1993),85 Ohio App.3d at 325, quoting In re Campbell (1983), 13 Ohio App.3d 34, 36,468 N.E.2d 93, 96. *Page 10 
 {¶ 26} Generally, after an adjudication, and in accordance with R.C.2151.414, a children services agency prepares and files a case plan. The case plan includes objectives deemed necessary for reunification. However, R.C. 2151.419(A)(2)(e) provides exceptions to this requirement and states that "If any of the following apply, the court shall make a determination that the agency is not required to make reasonable efforts to prevent the removal of the child from the child's home, eliminate the continued removal of the child from the child's home, and return the child to the child's home: . . .(e) The parent from whom the child was removed has had parental rights involuntarily terminated pursuant to section 2151.353, 2151.414, or 2151.415 of the Revised Code with respect to a sibling of the child." R.C. 2151.419(A)(2)(e).
 {¶ 27} Two appellate courts in In re Sheffey and In re NicholasP. have found an exception to the R.C. 2151.419(A)(2)(e) mandate. The courts found that R.C. 2151.419(A)(3) states that "At any hearing in which the court determines whether to return a child to the child's home, the court may issue an order that returns the child in situations in which the conditions described in division (A)(2)(a) to (e) of this section are present."
 {¶ 28} Thus, the courts held that the statute provides the trial court with discretion to override the mandate of R.C. 2151.419(A)(2)(e). The court in Sheffey specifically stated that "[W]ithout this override provision, any parent who has ever involuntarily lost permanent custody of a child regardless of his or her current fitness and ability to parent, would forever be presumptively denied the benefit of the efforts by the agency to work for reunification or other warranted services.In re Sheffey, 167 Ohio App.3d 141, *Page 11 2006-Ohio-619, 854 N.E.2d 508; See also, In re Nicholas P., Lucas App. No. L-06-1051, 2006-Ohio-6213.
 {¶ 29} Once reunification efforts have either been waived, unsuccessfully completed or exhausted without progress, R.C.2151.353(A)(4) states in pertinent part that if a child has been adjudicated abused, neglected or dependent, the court may "commit the child to the permanent custody of a public children service agency or private child placing agency, if the court determines in accordance with division (E) of section 2151.414 of the Revised Code that the child cannot be placed with one of the child's parents within a reasonable period of time or should not be placed with either parent and determines in accordance with division (D) of section 2151.414 [2151.41.4] of the Revised Code that the permanent commitment is in the best interest of the child." R.C. 2151.353(A)(4).
 {¶ 30} With respect to the first requirement, R.C. 2151.414(E) sets forth a list of 16 possible predicate findings. One of those findings must be established prior to a judicial conclusion that a child cannot or should not be placed with the child's parent. R.C. 2151.414(E)(11) states that, in determining whether a child cannot be placed with a parent within a reasonable period of time or should not be placed with a parent, the court shall determine if the following exists: "The parent has had parental rights involuntary terminated pursuant to section or sections 2151.343 or 2151.415 of the Revised Code with respect to a sibling of the child". R.C.2151.414(E)(11).
 {¶ 31} The statute also enumerates certain criteria for evaluating whether permanent custody with a children's services agency is in the child's best interests. R.C. 2151.414(D) requires a court to consider the following factors: *Page 12 
 {¶ 32} "(1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster care givers and out-of-home providers, and any other person who may significantly affect the child;
 {¶ 33} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 {¶ 34} "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period ending on or after March 18, 1999;
 {¶ 35} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; * * *"
 {¶ 36} "(5) Whether any of the factors in division (E)(7) to (11) of this section apply in relation to the parents and the child."
 {¶ 37} A trial court's permanent custody finding, which is supported by clear and convincing evidence, will not be overturned as against the manifest weight of the evidence if the record contains competent credible evidence by which the court could have formed a firm belief or conviction that the essential statutory elements for a termination of parental rights have been established. In re S et al. (1995),102 Ohio App.3d 338, 344-345, 657 N.E.2d 307; Cross v. Ledford (1954),161 Ohio St. 469, 120 N.E.2d 118, paragraph three of the syllabus. Additionally, "[e]very reasonable intendment and every reasonable presumption must be made in favor of the judgment *Page 13 
and the finding of facts." Seasons Coal Co. v. Cleveland (1984),10 Ohio St.3d 77, 80, 461 N.E.2d 1273.
 {¶ 38} In the case sub judice, the trial court's dependency decision was based upon a finding that TCJFS had been granted permanent custody of five prior born children. The evidence further demonstrated that in the prior cases, the appellants had failed to alleviate concerns of poor hygiene, an unsafe home environment, poor parenting skills and domestic violence. Clearly, the court could find that the nature and circumstances of the appellants' situation would place a newborn at risk. Therefore, pursuant to R.C. 2151.04 the trial court did not abuse its discretion in adjudicating the child dependent.
 {¶ 39} Furthermore, the trial court did not abuse its discretion in granting appellee's R.C. 2151.419(A)(2)(e) motion. The trial court found that in Case Numbers 04JN00503 and 05JN00688 appellants' parental rights had previously been terminated for five of Lakyia's siblings. Certified judgment entries of the permanent custody decisions were submitted as evidence of the termination of appellants' parental rights to Jazmine, George, Rebecca, and Allan Jr. on October 31, 2005 and for Lakota on February 21, 2006. The prior terminations were uncontested.
 {¶ 40} Furthermore, this case can be distinguished from In re Shefferand In re NIcholas P. In both Sheffer and Nicholas P. the reviewing courts examined the reasons for the prior born child's permanent custody determination. In Sheffey, the court found that the prior born child's permanent custody had been granted because the parent was incarcerated and unable to care for the child rather than based upon a finding of unsuitability. In Nicholas P. the court found that the parents had made reasonable *Page 14 
efforts but had not completed their case plan prior to the termination proceeding. The court also stated that the evidence further showed that the parents of Nicholas P. voluntarily continued with services and had successfully completed their previous case plan requirements prior to the grant of permanent custody of Nicholas P.
 {¶ 41} In these cases the courts found that pursuant to R.C. 2151.419
the trial court abused its discretion in mandating a waiver of reasonable efforts pursuant to 2151.419(A)(2)(e). Specifically, the courts found that the trial court could not make a de facto decision to grant permanent custody based upon the prior termination of rights where (1) unsuitability had not been the basis for the prior terminations and (2) the parents had voluntarily completed required case plan objectives prior to the permanent custody hearing. Essentially, the appellate courts held that based upon the record, the prior termination of rights alone was insufficient to show by clear and convincing evidence that the children could not be placed with a parent within a reasonable period of time or should not be placed with a parent or that permanent custody was in the children's best interest
 {¶ 42} However, in this case, the unrefuted evidence established that appellants' parental rights to five prior born children had been involuntarily terminated. The caseworker who testified stated that she had been actively working with the family since 2002. Additionally, the testimony of the caseworker and the certified judgment entries of permanent custody established that the prior removal of the children had been due to an unsafe home environment, poor hygiene, domestic violence, parenting deficits and sexual abuse allegations. *Page 15 
 {¶ 43} Additionally, the evidence established that, in the prior permanent custody case involving the four siblings, the appellants had failed to complete any portion of their case plan for reunification, failed to comprehend or accept responsibility for the problems which led to the children's removal and failed to alleviate any of the concerns which led to the removal and permanent custody of their children. The "failure to alleviate" included testimony that the parents had also failed to make any current efforts to voluntarily follow through with any case plan objectives.
 {¶ 44} The testimony of appellants at the dispositional hearing established that they were resistant to case plan participation. It would appear that they only became interested in any active participation a month to two weeks prior to the dispositional hearing. Furthermore, at the time of the dispositional hearing they had failed to successfully complete any parenting classes, mental health services and anger management. Failure to complete these services supports the conclusion that they had failed to alleviate the ongoing concerns regarding the deficits in their parenting skills.
 {¶ 45} Therefore, pursuant to R.C. 2151.419(A)(2)(e), the court properly concluded that TCJFS was not required to make reasonable efforts to eliminate the continued removal of Lakyia from the child's home and to return the child to his home.
 {¶ 46} For these reasons we find the evidence to be substantial and credible that Lakyia is a dependent child, and we further find that the trial court did not abuse its discretion in removing the requirement that appellee be required to make reasonable efforts to eliminate the continued removal of Lakyia from the child's home and to return the child to his home. *Page 16 
 {¶ 47} Finally, we find that the trial court's findings, that the child could not be placed with any of the child's parents within a reasonable period of time or should not be placed with any parent and that the best interests of the child would be served by granting permanent custody to the Tuscarawas County Department of Job and Family Services, were supported by clear and convincing evidence.
 {¶ 48} Accordingly, appellants' assignment of error is hereby overruled.
 {¶ 49} The judgment of the Tuscarawas County Court of Common Pleas, Juvenile Court Division, is affirmed.
Edwards, J., Hoffman, P.J. and Delaney, J. concur
 JUDGMENT ENTRY
For the reasons stated in the Memorandum-Opinion on file, the judgment of the Tuscarawas County Court of Common Pleas, Juvenile Court Division, is affirmed. Costs assessed to appellants.
[1] See paragraph 29 of the Findings of Fact of the trial court's judgment entry adjudicating the children to be neglected and dependent in Tuscarawas County Court of Common Pleas, Juvenile Division Case Number 04JN00503, filed October 13, 2004. (State's Exhibit A).
[2] See paragraph 2 of the Findings of Fact of the trial court's judgment entry ordering the children to be placed in the permanent custody of TCJFS in Tuscarawas County Court of Common Pleas, Juvenile Division Case Number 04JN00503, filed October 31, 2005. (Stipulated Exhibit A)
[3] See paragraphs 5, 6, 9, of the Findings of Fact for the trial court's judgment entry ordering the children to be placed in the permanent custody of TCDJFS in Tuscarawas County Court of Common Pleas, Juvenile Division Case Number 04JN00503, filed October 31, 2005. (Stipulated Exhibit A)
[4] The five siblings included Jazmine Loyd Irwin, George Irwin, Rebecca Craig, Allan Craig, Jr., and Lakota Lee Craig in Case Numbers 04JN00503 and 05JN00688. *Page 1