[Cite as *In re B.R.*, 2013-Ohio-4023.]

STATE OF OHIO          )                   IN THE COURT OF APPEALS
                         )ss:               NINTH JUDICIAL DISTRICT
COUNTY OF SUMMIT    )

IN RE: N.R.                          C.A. Nos.     26834
       B.R.                                        26869


APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE Nos.    DN 11 07 0457
                     DN 11 07 0458

DECISION AND JOURNAL ENTRY

Dated: September 18, 2013

---

MOORE, Presiding Judge.

{¶1} Appellants, Amber S. ("Mother") and N.R., Sr. ("Father"), appeal from a judgment of the Summit County Court of Common Pleas, Juvenile Division, that terminated their parental rights and placed their two minor children in the permanent custody of Summit County Children Services Board ("CSB"). This Court affirms.

I.

{¶2} Mother and Father are the natural parents of B.R., born April 26, 2008, and N.R., born March 24, 2011. On July 8, 2011, CSB filed complaints, alleging that the children were neglected primarily because of the parents' methamphetamine use and concerns about domestic violence in the home. Following the shelter care hearing, the trial court ordered that the children could remain in the home, where they had been residing with Mother and the maternal grandmother. The children were later adjudicated dependent children based on the parents' admissions that they had drug abuse problems and needed treatment. Upon agreement of the

parents, the children were placed in the temporary custody of CSB so the parents would have a better opportunity to work on the drug treatment goals of the case plan.

{¶3} During the pendency of the case, however, the parents did not participate in drug treatment, but instead continued their involvement in criminal drug activity. By April 2011, Mother and Father had been arrested and incarcerated for different drug-related offenses and other criminal charges. Each parent was later convicted and sentenced to a term of incarceration of at least two years.

{¶4} Prior to the birth of N.R., Mother, Father, and B.R. had lived with the paternal grandmother in Virginia for over a year. Although the paternal grandmother had initially stayed in Virginia when the parents moved with B.R. to Akron, she later relocated to this area and asked CSB to place the children in her home. The grandmother had supervised visits with the children for several months, although she did not consistently attend the visits. Because grandmother informed CSB's kinship assessor that she had been overusing prescribed pain medication and needed treatment, CSB did not place the children in her home and would not allow her to visit the children until she obtained treatment.

{¶5} On June 8, 2012, CSB moved for permanent custody of both children. Mother moved for an alternate disposition of legal custody to the paternal grandmother and Father supported that motion. Following a hearing on both motions, the trial court denied the motion for legal custody to the grandmother because she still had not taken steps to address her admitted abuse of prescription pain medication. The trial court also expressed concern that the grandmother lacked the commitment and financial resources to provide a permanent home for the children. Consequently, the trial court terminated the parents' parental rights and placed the children in the permanent custody of CSB. Mother and Father separately appealed and each

raised two assignments of error. Their appeals were later consolidated. This Court will consolidate two of their assigned errors to facilitate our review.

II.

**FATHER'S ASSIGNMENT OF ERROR I**

APPELLANT WAS DENIED DUE PROCESS OF LAW AND HIS RIGHT TO BE PRESENT FOR THE HEARINGS WHEN THE FIRST DAY OF TESTIMONY WAS CONDUCTED WITHOUT HIS BEING PRESENT, IN VIOLATION OF SECTION 2151.414 OF THE OHIO REVISED CODE, THE FIFTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION, AND ARTICLE ONE, SECTION SIXTEEN OF THE OHIO CONSTITUTION.

**{¶6}** Father's first assignment of error is that he was denied his right to due process because he was incarcerated and was not transported to court to attend the first day of the hearing. Father asks this Court to follow the due process reasoning of the Eleventh District Court of Appeals in *In re Sheffey*, 167 Ohio App.3d 141, 2006-Ohio-619 (11th Dist.). Aside from the analysis of that case hinging on distinguishable facts, this Court need not look to the decision of another jurisdiction to guide the analysis on this issue, as there is ample authority from this appellate district. *See, e.g.*, *In re C.M.*, 9th Dist. Summit Nos. 23606, 23608 and 23629, 2007-Ohio-3999, ¶ 24. This Court has repeatedly held that the trial court does not violate the due process rights of an incarcerated parent by failing to order that he or she be transported to the permanent custody hearing so long as "the parent is represented by counsel at the hearing, a full record of the proceedings is made, and any testimony that the parent may wish to present could be offered by way of deposition." *Id.*, citing *In re Frasher,* 9th Dist. Summit No. 18100, 1997 WL 537666, *2 (Aug. 20, 1997), *In re Smith,* 9th Dist. Summit No. 16778, 1995 WL 89455, *2 (Mar. 1, 1995), and *In re Harding,* 9th Dist. Summit No. 16552, 1995 WL 28993, *3 (Jan. 25, 1995).

{¶7}    The record in this case includes a full transcript of the permanent custody hearing, which demonstrates that Father was represented by counsel throughout the hearing. Although Father did not attend the first day of the hearing, his counsel fully participated by giving an opening statement and cross-examining CSB's witnesses. Through the opening statement, counsel explained to the court that he had discussed the case with Father and that Father understood that he could not provide a home for the children at that time. He further conveyed Father's wishes that the court keep his family together by placing the children in the legal custody of the paternal grandmother. Counsel further asserted the reasons why Father believed that the grandmother was a suitable caregiver for the children.

{¶8}    The transcript further reveals that Father was transported to court to attend the second day of the hearing and was able to present his testimony to the court in person. In fact, it was not Father's counsel but the trial judge who raised this issue prior to the commencement of the hearing. The judge explained on the record:

> [T]he court did not receive a request to transport father until it was too late to do so. If father would like to be here for that hearing, we will also make arrangements for him to be transported for that second [day of] hearing so that he can provide any testimony or information that he has.

Father's counsel did not request a continuance of the first day of the hearing, nor did he raise any objection to the manner in which the trial judge planned to afford Father an opportunity to participate in the hearing.

{¶9}    The record further reveals that Father was transported to court and attended the second day of the hearing. He made a narrative statement to the court that he loved his children, admitted that he could not provide them with a home, and expressed to the court that he thought legal custody to the paternal grandmother was in the children's best interests. Consequently, Father has failed to demonstrate that his due process rights were violated because he was not able

to attend the first day of the permanent custody hearing. His first assignment of error is overruled.

## FATHER'S ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED WHEN IT GRANTED [CSB'S] MOTION FOR PERMANENT CUSTODY WHEN THE DECISION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

## MOTHER'S ASSIGNMENT OF ERROR I

THE TRIAL COURT'S DECISION TO GRANT [CSB'S] MOTION FOR PERMANENT CUSTODY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶10} Father's second assignment of error and Mother's first assignment of error are that the trial court's permanent custody decision was against the manifest weight of the evidence. Before a juvenile court may terminate parental rights and award to a proper moving agency permanent custody of children, it must find clear and convincing evidence of both prongs of the permanent custody test that: (1) the children are abandoned, orphaned, have been in the temporary custody of the agency for at least 12 months of the prior 22 months, or that the children cannot be placed with either parent within a reasonable time or should not be placed with either parent, based on an analysis under R.C. 2151.414(E); and (2) the grant of permanent custody to the agency is in the best interests of the children, based on an analysis under R.C. 2151.414(D). *See* R.C. 2151.414(B)(1) and 2151.414(B)(2); *see also In re William S.*, 75 Ohio St.3d 95, 99 (1996).

{¶11} The trial court found that the first prong of the permanent custody test had been satisfied because both parents were incarcerated, serving terms of at least two years, and necessarily would not be available to care for the children within the next 18 months. *See* R.C. 2151.414(E)(12). Neither parent contests that finding. Instead, they challenge the trial court's

best interest finding and argue that legal custody to the paternal grandmother, not permanent custody to CSB, was in the best interests of the children.

{¶12} Because the trial court's decision to deny the motion for legal custody to the paternal grandmother was also based on the best interest of the children, "this Court typically conducts a single 'best interest' review of the trial court's decision to place the child[ren] in the permanent custody of the agency rather than in the legal custody to a relative." *In re I.A.*, 9th Dist. Summit No. 26642, 2013-Ohio-360, ¶ 10. If permanent custody is in the children's best interest, legal custody to the grandmother necessarily is not. *Id.* "'Consequently, this Court will review the factors set forth in R.C. 2151.414(D) in reviewing the [best interest] decision of the trial court * * *.'" *Id.*, quoting *In re T-G.M.*, 9th Dist. Summit No. 25858, 2011-Ohio-3940, ¶ 13.

{¶13} When determining whether a grant of permanent custody is in the children's best interests, the juvenile court must consider the following factors:

> The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

> The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

> The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period * * *;

> The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency * * *.

R.C. 2151.414(D)(1)(a)-(d).[1]

---

[1] The factor set forth in R.C. 2151.414(D)(1)(e) does not apply to the facts of this case.

**{¶14}** The parents do not dispute that neither of them was able to provide a suitable home for their children at the time of the hearing. They ask that this Court analyze the best interest factors as they pertain to placing the children with the paternal grandmother rather than terminating their parental rights.

**{¶15}** The children's interaction and interrelationship with the paternal grandmother was limited to supervised visitation that began on a monthly basis and was later offered more frequently after the parents were incarcerated. The trial court heard conflicting evidence about how many visits the grandmother actually missed and the specific reason that her visits were later terminated. Nonetheless, it was not disputed that, during the fifteen months that this case was pending, the grandmother missed several scheduled visits with the children and actually attended a total of only five visits.

**{¶16}** It was also not disputed that, after learning about the grandmother's admitted overuse of prescription pain medication, CSB required her to engage in regular drug treatment before her visits with the children would be reinstated. Because the grandmother did not obtain any treatment during this case, her visits did not resume. At the time of the hearing, she had not seen the children for more than four months.

**{¶17}** CSB also expressed concern that the grandmother appeared to be bonded to B.R., but was very detached from N.R. The grandmother admitted that she had not developed a relationship with N.R. before this case began and had seen him only five times during this case. The caseworker had observed some of those visits and testified that the grandmother would interact with B.R. but tended to leave N.R. sitting in his car seat. Even her relationship with B.R. had suffered by her failure to visit on a consistent basis. B.R.'s counselor testified that B.R. had a lot of anxiety toward the grandmother and would become very upset when the grandmother

missed visits. After the grandmother's visits were terminated, B.R. told her counselor that she did not want to see her grandmother anymore.

{¶18} The children were bonded to each other and were doing very well in the foster home. B.R.'s counselor testified that the routine and structure of the foster home had helped to relieve B.R.'s anxiety. The foster parents were not interested in adopting the children, however.

{¶19} Because the children were both under the age of five at the time of the hearing, the guardian ad litem spoke on their behalf. She testified permanent custody was in the best interest of both children. The guardian did not believe that the grandmother could provide a suitable home for the children at that time because she had not addressed her substance abuse problem. B.R. had also told the guardian that she wanted to remain with the foster parents.

{¶20} Although B.R. had spent the first two and one-half years of her life living with her parents in Virginia in the home of the paternal grandmother, the grandmother admitted that she was also overusing prescription medication during that time and that Mother was the primary caretaker of B.R. N.R. had never lived with the grandmother.

{¶21} By the time of the permanent custody hearing, the children had been living outside their parents' custody for over a year. N.R. had spent almost all of his short life living in temporary placements. Both children were in need of a legally secure permanent placement and their parents were unable to provide a home for them any time in the foreseeable future.

{¶22} The parents argue that the paternal grandmother was ready and willing to provide the children with a stable, permanent home. The grandmother testified, however, that she was prepared to care for the children until the age of majority "if I have to" and admitted that she would need help raising them. She testified that she assumed Mother and Father would help her when they were released from prison.

{¶23} Although Father and Mother assert that the grandmother did not have a substance abuse problem because her medications had been legally prescribed, the grandmother admitted to the CSB kinship assessor that she had been taking too much pain medication and that she wanted to get clean and sober so she could get custody of the children. She told the assessor that she had been taking as many as 6 oxycodone pills per day. Rather than entering treatment to become drug-free, she had recently switched to Percocet for her pain.

{¶24} At the hearing, the grandmother testified that she thought she should have a "clear mind" if she was going to care for the children. Although she recognized that she had a need to get ongoing treatment, she had not yet started a treatment plan. She explained that she wanted to see a psychiatrist who "specializes in addiction" and, although she had scheduled an appointment, she had not yet seen that professional. Although the grandmother had repeatedly assured CSB that she would comply with the case plan so that she could obtain custody of the children, she had failed to engage in the recommended drug treatment and had also refused to obtain a mental health assessment because she did not believe that she needed one.

{¶25} The grandmother further testified that she had been unable to comply with CSB's requests that she undergo drug testing and treatment because she had "a lot on [her] plate right now" because she had been dealing with the impending death of one of her parents and health issues of the other. She failed to explain how she would be able to manage the additional obligation of caring for two small children, however. Additionally, the grandmother's only source of income was Social Security Disability, which barely covered her current monthly expenses. Consequently, the trial court reasonably concluded that the grandmother was not able to provide the children with a suitable home at that time.

{¶26} Because the children's parents were unable to provide them with a stable home and CSB had found no suitable relatives who were able to do so, the trial court reasonably concluded that a legally secure permanent placement would only be achieved by placing the children in the permanent custody of CSB. Because there was ample evidence before the trial court to support its finding that permanent custody to CSB and not legal custody to the paternal grandmother was in the best interests of B.R. and N.R, Father's second assignment of error and Mother's first assignment of error are overruled.

## MOTHER'S ASSIGNMENT OF ERROR II

> THE TRIAL COURT COMMITTED PLAIN ERROR BY ALLOWING [CSB] TO RECALL THE ONGOING SOCIAL WORKER SO THAT HE COULD CHANGE HIS TESTIMONY.

{¶27} Mother's second assignment of error is that the trial court erred in allowing CSB to recall the social worker because he changed some of the testimony that he gave during CSB's case in chief. Specifically, on rebuttal, the caseworker corrected his testimony about how many visits the grandmother had missed with the children before her visits were terminated. He explained that the grandmother had actually missed seven visits before her visitation was terminated, several more than he had indicated in his original testimony. He also explained in more detail when and why the grandmother's visits were terminated.

{¶28} Mother argues that the caseworker's corrected testimony was not proper rebuttal evidence and should not have been allowed. She focuses her argument solely on whether the admission of this testimony was proper, but fails to argue how she was prejudiced in any way. To establish reversible error, Mother must demonstrate not only that the trial court erred by admitting this testimony, but also that she suffered prejudice as a result. *Lowry v. Lowry*, 48 Ohio App.3d 184, 190 (4th Dist.1988), citing *Gries Sports Ents., Inc. v. Cleveland Browns*

*Football Co., Inc.*, 26 Ohio St.3d 15, 28 (1986). "A prejudicial error is defined as one which affects or presumptively affects the final results of the trial." *Miller v. Miller*, 5th Dist. Coshocton No. 06 CA 3, 2006-Ohio-7019, ¶ 12.

{¶29} There is nothing in the record to suggest that the caseworker's corrected testimony influenced the permanent custody decision. As noted already, the trial court heard conflicting evidence about the number of visits that the grandmother actually missed. It made no factual finding on that issue, however, and its best interest findings made no reference to the number of visits the grandmother missed or the caseworker's rebuttal testimony. In fact, the trial court did not mention that the grandmother had missed any visits before her visits were terminated.

{¶30} Moreover, as explained above, it was not disputed that the grandmother had visited with the children only a handful of times during this case and had not seen them for several months before the hearing. More significantly, in finding that legal custody to the grandmother was not in the children's best interests, the trial court focused on her failure to address her admitted prescription drug problem, which prevented her from providing the children with a suitable home. Because Mother fails to demonstrate that she was prejudiced by the caseworker's rebuttal testimony, her second assignment of error is overruled.

### III.

{¶31} The assignments of error raised by Father and Mother are overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

CARLA MOORE
FOR THE COURT

WHITMORE, J.
CONCURS.

CARR, J.
DISSENTING.

{¶32} I respectfully dissent. Although this Court has held that due process does not compel a parent's attendance at the permanent custody hearing, I do not agree with the reasoning of those decisions. Specifically, by focusing on the civil nature of a juvenile case, those decisions ignore the constitutional significance of a deprivation of parental rights and essentially equate the loss of parental rights with a loss of property. *See In re Harding,* 9th Dist. Summit No. 16552, 1995 WL 28993, *3 (Jan. 25, 1995).

{¶33} Although juvenile cases are civil in nature, this Court has often emphasized that the serious deprivation of rights at issue in these cases requires that parents be afforded greater procedural protections than in a typical civil case. Because I believe that the loss of parental rights is more akin to a loss of life or liberty than to a loss of property, I am more persuaded by the due process analysis of the Eleventh District Court of Appeals in *In re Sheffey*, 167 Ohio App.3d 141, 2006-Ohio-619 (11th Dist.).

{¶34} Father should have had the opportunity to participate in the entire permanent custody hearing, including the first day during which CSB presented all of its witnesses against the parents. For that reason, I would sustain Father's first assignment of error and reverse and remand the permanent custody judgment for a new hearing.

APPEARANCES:

ADAM VAN HO, Attorney at Law, for Appellant.

GREGORY A. PRICE, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and RICHARD S. KASAY, Assistant Prosecuting Attorney, for Appellee.