OPINION
{¶ 1} Appellant Allan Craig appeals the decision of the Tuscarawas County Court of Common Pleas, Juvenile Division, which granted permanent custody of his son, Stephen, to Appellee Tuscarawas County Job and Family Services ("TCJFS"). The relevant facts leading to this appeal are as follows.
 {¶ 2} Appellant and Rayann Craig are the parents of Stephen Craig, born in January 2008.[1] On January 17, 2008, shortly after the date of Stephen's birth, TCJFS filed a dependency/permanent custody complaint. Stephen was placed in the temporary custody of TCJFS at that time. The complaint alleged that six of Stephen's siblings had previously been ordered into the permanent custody of TCJFS, and that appellant and Rayann lacked a suitable residence for Stephen, having repeatedly lost their housing. The complaint also alleged that appellant had ongoing anger management and violence issues. TCJFS further prepared a case plan, which did not include a reunification plan for either parent with the child.
 {¶ 3} An adjudicatory hearing was held on the dependency complaint on March 12, 2008. The trial court found Stephen to be a dependent child, and temporary custody with TCJFS was maintained.
 {¶ 4} On April 2, 2008, TCJFS filed a motion to determine the need for the agency to expend reasonable efforts to reunify Stephen with the parents.
 {¶ 5} An evidentiary hearing on the permanent custody complaint was held on April 9, 2008. A judgment entry granting permanent custody was filed on April 17, 2008. *Page 3 
The court additionally therein found, pursuant to R.C. 2151.419, that the agency was not required to expend reasonable efforts to reunify Stephen with the parents.
 {¶ 6} Appellant filed a notice of appeal on May 9, 2008. He herein raises the following sole Assignment of Error:
 {¶ 7} "I. THE TRIAL COURT'S DECISION IN FINDING STEPHEN CRAIG TO BE A DEPENDENT CHILD PURSUANT TO ORC 2151.04(D) AND THE DECISION TO TERMINATE THE APPELLANT'S PARENTAL RIGHTS AND GRANT PERMANENT CUSTODY TO TUSCARAWAS COUNTY JOB AND FAMILY SERVICES IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE PURSUANT TO R.C. 2151.414 AND ERRED (SIC) IN DETERMINING THAT JOB AND FAMILY SERVICES WAS NOT REQUIRED TO EXPEND REASONABLE EFFORTS AT REUNIFICATION BEFORE GRANTING PERMANENT CUSTODY."
 I. {¶ 8} In his sole Assignment of Error, appellant contends the trial court erred in finding Stephen to be a dependent child and in granting permanent custody to TCJFS. We disagree.
 Dependency Finding {¶ 9} Appellant first challenges the underlying dependency finding, maintaining that the evidence presented did not support same. We note the dependency finding was rendered on March 14, 2008, based on a hearing conducted on March 12, 2008. However, the record on appeal contains the transcript of the permanent custody hearing of April 9, 2008 only. It is well settled that when portions of the transcript necessary to *Page 4 
resolve issues are not part of the record on appeal, we must presume regularity in the trial court proceedings. Knapp v. EdwardsLaboratories (1980), 61 Ohio St.2d 197, 400 N.E.2d 384.
 {¶ 10} We therefore find no merit in appellant's claims as to the dependency finding.
 Manifest Weight {¶ 11} Appellant next contends the trial court's decision to grant permanent custody was against the manifest weight of the evidence.
 {¶ 12} As an appellate court, we are not fact finders; we neither weigh the evidence nor judge the credibility of witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. Cross Truck v.Jeffries (Feb. 10, 1982), Stark App. No. CA-5758. Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. C.E. Morris Co. v. FoleyConstruction (1978), 54 Ohio St.2d 279, 376 N.E.2d 578. It is well-established that the trial court is in the best position to determine the credibility of witnesses. See, e.g., In re Brown, Summit App. No. 21004, 2002-Ohio-3405, ¶ 9, citing State v. DeHass (1967), 10 Ohio St .2d 230, 227 N.E.2d 212.
 {¶ 13} The procedures upon a complaint for permanent custody (as opposed to a motion for permanent custody), are generally governed by R.C. 2151.353. In re I.M., Cuyahoga App. Nos. 82669, 82695,2003-Ohio-7069, ¶ 10. Specifically, R.C. 2151.353(A) states in pertinent part: "If a child is adjudicated an abused, neglected, or dependent child, the court may make any of the following orders of disposition: *Page 5 
 {¶ 14} "* * *
 {¶ 15} "(4) Commit the child to the permanent custody of a public children services agency or private child placing agency, if the court determines in accordance with division (E) of section 2151.414 of the Revised Code that the child cannot be placed with one of the child's parents within a reasonable time or should not be placed with either parent and determines in accordance with division (D) of section 2151.414 of the Revised Code that the permanent commitment is in the best interest of the child. * * *.
 {¶ 16} "* * *"
 {¶ 17} In turn, R.C. 2151.414(E) sets forth the factors the trial court is to consider when determining whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents:
 {¶ 18} "(E) In determining at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence * * * that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:
 {¶ 19} "(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside *Page 6 
the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
 {¶ 20} "(2) Chronic mental illness, chronic emotional illness, mental retardation, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the hearing pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code;
 {¶ 21} "(3) The parent committed any abuse as described in section 2151.031 of the Revised Code against the child, caused the child to suffer any neglect as described in section 2151.03 of the Revised Code, or allowed the child to suffer any neglect as described in section 2151.03 of the Revised Code between the date that the original complaint alleging abuse or neglect was filed and the date of the filing of the motion for permanent custody;
 {¶ 22} "(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child; *Page 7 
 {¶ 23} "(5) The parent is incarcerated for an offense committed against the child or a sibling of the child;
 {¶ 24} "(6) The parent has been convicted of or pleaded guilty to an offense under division (A) or (C) of section 2919.22 or under section 2903.16, 2903.21, 2903.34, 2905.01, 2905.02, 2905.03, 2905.04, 2905.05,2907.07, 2907.08, 2907.09, 2907.12, 2907.21, 2907.22, 2907.23, 2907.25,2907.31, 2907.32, 2907.321, 2907.322, 2907.323, 2911.01, 2911.02,2911.11, 2911.12, 2919.12, 2919.24, 2919.25, 2923.12, 2923.12, 2923.161,2925.02, or 3716.11 of the Revised Code and the child or a sibling of the child was a victim of the offense or the parent has been convicted of or pleaded guilty to an offense under section 2903.04 of the Revised Code, a sibling of the child was the victim of the offense, and the parent who committed the offense poses an ongoing danger to the child or a sibling of the child.
 {¶ 25} "(7) The parent has been convicted of or pleaded guilty to one of the following:
 {¶ 26} "(a) An offense under section 2903.01, 2903.02, or 2903.03 of the Revised Code or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to an offense described in those sections and the victim of the offense was a sibling of the child or the victim was another child who lived in the parent's household at the time of the offense;
 {¶ 27} "(b) An offense under section 2903.11, 2903.12, or 2903.13 of the Revised Code or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to an offense described in those sections and the *Page 8 
victim of the offense is the child, a sibling of the child, or another child who lived in the parent's household at the time of the offense;
 {¶ 28} "(c) An offense under division (B)(2) of section 2919.22 of the Revised Code or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to the offense described in that section and the child, a sibling of the child, or another child who lived in the parent's household at the time of the offense is the victim of the offense;
 {¶ 29} "(d) An offense under section 2907.02, 2907.03, 2907.04,2907.05, or 2907.06 of the Revised Code or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to an offense described in those sections and the victim of the offense is the child, a sibling of the child, or another child who lived in the parent's household at the time of the offense;
 {¶ 30} "(e) A conspiracy or attempt to commit, or complicity in committing, an offense described in division (E)(7)(a) or (d) of this section.
 {¶ 31} "(8) The parent has repeatedly withheld medical treatment or food from the child when the parent has the means to provide the treatment or food, and, in the case of withheld medical treatment, the parent withheld it for a purpose other than to treat the physical or mental illness or defect of the child by spiritual means through prayer alone in accordance with the tenets of a recognized religious body.
 {¶ 32} "(9) The parent has placed the child at substantial risk of harm two or more times due to alcohol or drug abuse and has rejected treatment two or more times or refused to participate in further treatment two or more times after a case plan issued pursuant to section 2151.412 of the Revised Code requiring treatment of the parent was *Page 9 
journalized as part of a dispositional order issued with respect to the child or an order was issued by any other court requiring treatment of the parent.
 {¶ 33} "(10) The parent has abandoned the child.
 {¶ 34} "(11) The parent has had parental rights involuntarily terminated pursuant to this section or section 2151.353 or 2151.415 of the Revised Code with respect to a sibling of the child.
 {¶ 35} "(12) The parent is incarcerated at the time of the filing of the motion for permanent custody or the dispositional hearing of the child and will not be available to care for the child for at least eighteen months after the filing of the motion for permanent custody or the dispositional hearing.
 {¶ 36} "(13) The parent is repeatedly incarcerated, and the repeated incarceration prevents the parent from providing care for the child.
 {¶ 37} "(14) The parent for any reason is unwilling to provide food, clothing, shelter, and other basic necessities for the child or to prevent the child from suffering physical, emotional, or sexual abuse or physical, emotional, or mental neglect.
 {¶ 38} "(15) The parent has committed abuse as described in section 2151.031 of the Revised Code against the child or caused or allowed the child to suffer neglect as described in section 2151.03 of the Revised Code, and the court determines that the seriousness, nature, or likelihood of recurrence of the abuse or neglect makes the child's placement with the child's parent a threat to the child's safety.
 {¶ 39} "(16) Any other factor the court considers relevant."
 {¶ 40} The record in the case sub judice indicates that TCJFS first called the prior ongoing caseworker Betsy Wanosik. Although she was not the worker on the *Page 10 
present case, she detailed her involvement in the cases involving Stephen's older siblings. These siblings are: Jasmine (age 9), George (age 7), Rebecca (age 5), Allan, Jr. (age 4), Lakota (age 2), and Lakyia (age 1). Appellant and Rayann Craig are the parents of the youngest four siblings; however, appellant is not the father of Jasmine and George. All six siblings have been ordered into the permanent custody of TCJFS via previous cases. Tr. at 6. Wanosik recalled that appellant and Rayann had failed to complete any of the items in their previous case plans, and she agreed that it had been "frustrating to work with them." Tr. at 8. She noted that the only positive changes had been regarding improvement in the home conditions. Id. Both appellant and Rayann demonstrated ongoing problems with following through on their requirements. Tr. at 9.[2]
 {¶ 41} TCJFS also presented testimony from the current ongoing caseworker, Jaime Grunder. Because the circumstances of the case involved an immediate permanent custody filing, her involvement with appellant and Rayann was, admittedly, quite limited. See Tr. at 27. She had largely been managing the case by "making sure that this child's needs are met * * *." Tr. at 28. However, counsel for Rayann called Lori Eggleston, a case manager and instructor for Goodwill Parenting, as a witness on behalf of the parents. Eggleston testified that appellant and Rayann had been attending a current parenting program for four weeks and had not missed any classes. She indicated on cross-examination by TCJFS that the prognosis in the program was "fair." Tr. at 44. *Page 11 
 {¶ 42} Finally, the court heard testimony appellant and Rayann, and from Bill Buchwald from Personal and Family Counseling Services. Buchwald stated that appellant had engaged in three sessions, and that he had a good probability of successfully completing the anger management program. Appellant himself told the court he had accepted responsibility for his past actions, and that he is learning to address his issues through anger management and parenting classes. Tr. at 80-96.
 {¶ 43} We next turn to the best interest issue. We have frequently noted "[t]he discretion which the juvenile court enjoys in determining whether an order of permanent custody is in the best interest of a child should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned." In re Mauzy Children (Nov. 13, 2000), Stark App. No. 2000CA00244, quoting In re Awkal (1994),95 Ohio App.3d 309, 316, 642 N.E.2d 424. In determining the best interest of a child, the trial court is required to consider the factors contained in R.C. 2151.414(D). These factors are as follows:
 {¶ 44} "(1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster care givers and out-of-home providers, and any other person who may significantly affect the child;
 {¶ 45} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 {¶ 46} "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999; *Page 12 
 {¶ 47} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 {¶ 48} "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child."
 {¶ 49} Betsy Wanosik testified that during her involvement in the case, no appropriate family members had ever come forward as potential custodial parties. Tr. at 9. Because of Stephen's young age, she recommended against a permanent planned living arrangement ("PPLA"), and opined that it would be in the child's best interest to be placed in the permanent custody of the agency. Jaime Grunder testified that Stephen was faring well in his current foster placement and that he had developed a bond with his foster parents. Both Wanosik and Grunder assured the court that "in all likelihood," Stephen would be able to maintain a relationship with his siblings.
 {¶ 50} Upon a review of the record in light of the pertinent statutory factors, particularly the impact of subsection (E)(11), we find the record contains clear and convincing evidence to support the trial court's determination. Accordingly, despite some evidence that appellant had made very recent progress on anger management issues, the trial court did not err when it determined Stephen could not be placed with the parents within a reasonable time or should not be placed with either parent, and we hold the grant of permanent custody of Stephen to TCJFS was made in the consideration of the child's best interests and did not constitute an abuse of discretion. *Page 13 
 Reasonable Efforts Issue {¶ 51} Appellant finally challenges the trial court's decision, pursuant to R.C. 2151.419, that the agency was not required to expend reasonable efforts to reunify Stephen with the parents.
 {¶ 52} Pursuant to R.C. 2151.419, the agency which has removed the child from the home must have made reasonable efforts to prevent the removal of the child from the child's home, eliminate the continued removal of the child from the home, or make it possible for the child to return home safely. In re Hess, Stark App. Nos. 2007CA00262, 2007CA00261,2008-Ohio-1920, ¶ 46.
 {¶ 53} However, R.C. 2151.419(A)(2) states in pertinent part as follows:
 {¶ 54} "If any of the following apply, the court shall make a determination that the agency is not required to make reasonable efforts to prevent the removal of the child from the child's home, eliminate the continued removal of the child from the child's home, and return the child to the child's home:
 {¶ 55} "* * *
 {¶ 56} "(e) The parent from whom the child was removed has had parental rights involuntarily terminated pursuant to section 2151.353,2151.414, or 2151.415 of the Revised Code with respect to a sibling of the child."
 {¶ 57} Appellant nonetheless directs us to R.C. 2151.419(A)(3), which states: "At any hearing in which the court determines whether to return a child to the child's home, the court may issue an order that returns the child in situations in which the conditions described in divisions (A)(2)(a) to (e) of this section are present." *Page 14 
 {¶ 58} Appellant thus further directs us to the decision of the Sixth District Court of Appeals in In re Nicholas P., 169 Ohio App.3d 570,863 N.E.2d 1102, 2006-Ohio-6213, which states that R.C. 2151.419(A)(3) "provides the trial court with the discretion to override the mandate of R.C. 2151.419(A)(2)(e)." Id. at ¶ 36.
 {¶ 59} In In re Craig, Tuscarawas App. No. 2007 AP 03 0017,2007-Ohio-3726, we referenced the Nicholas P. decision, although we did not expressly adopt the "override" holding therein. Upon review, we find in the case sub judice that the trial court properly concluded that TCJFS was not required to make reasonable efforts to prevent and eliminate the removal of Stephen from his home and to return the child to his home.
 {¶ 60} Appellant's sole Assignment of Error is therefore overruled.
 {¶ 61} For the foregoing reasons, the judgment of the Court of Common Pleas, Juvenile Division, Tuscarawas County, Ohio, is hereby affirmed.
 By: Wise, J. Gwin, J. and Farmer, J. concur *Page 15 
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas, Juvenile Division, Tuscarawas County, Ohio, is affirmed.
Costs assessed to appellant.
[1] Rayann has separately appealed under case number 08-31.
[2] The trial court aptly noted that both parents have historically failed to demonstrate insight into the issues which had led to the removal of the children. See Judgment Entry, April 17, 2008, at 2. *Page 1