[Cite as *In re J.L.*, 2021-Ohio-3977.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## LAKE COUNTY

| | |
|---|---|
| IN THE MATTER OF: | **CASE NOS. 2021-L-066** |
| | **2021-L-067** |
| J.L., C.L., S.L., AND E.L., | **2021-L-068** |
| DEPENDENT CHILDREN | **2021-L-069** |
| | |
| | Civil Appeals from the Court of Common Pleas, Juvenile Division |
| | |
| | Trial Court Nos. 2019 DP 00241 |
| | 2019 DP 00242 |
| | 2019 DP 00243 |
| | 2019 DP 00244 |

**O P I N I O N**

Decided: November 8, 2021
Judgment: Affirmed

*Joseph K. Palazzo*, Kurt Law Office, LLC, 4770 Beidler Road, Willoughby, OH 44094 (For Appellant).

*Maria A. Rowan*, Assistant Prosecutor, 105 Main Street, P.O. Box 490, Painesville, OH 44077; *Stephanie G. Snevel*, Lake County Department of Job and Family Services, 177 Main Street, Painesville, OH 44077 (For Appellee).

*Maureen A. Sweeney*, 11805 Girdled Road, Painesville, OH 44077 (Guardian ad litem).


THOMAS R. WRIGHT, J.

{¶1} Appellant, Sherwood L., appeals the May 28, 2021 judgment entries terminating his parental rights and granting permanent custody of his four children to appellee, the Lake County Department of Job and Family Services ("Department").

Appellant's children were born May 2011 (E.L.); June 2012 (S.L.); April 2016 (C.L.); and February 2018 (J.L.). The parental rights of their mother, appellant's wife, were likewise terminated. We affirm.

{¶2} The Department filed a complaint on March 5, 2019, alleging the children were dependent and requested emergency temporary custody of the children based on allegations of substance abuse, mental health issues, and physical violence between the parents. The mother, whom appellant had reported missing, had also been located in possession of heroin and stolen property. The trial court appointed a guardian ad litem to represent the children's best interests.

{¶3} The children were removed from the home and adjudicated dependent, as defined in R.C. 2151.04(C): "Whose condition or environment is such as to warrant the state, in the interests of the child, in assuming the child's guardianship." Thereafter, and prior to the dispositional hearing, the children's mother suffered a stroke, which impacted her cognitive abilities and capability to care for herself and others.

{¶4} Since their removal, the children have been continuously in the temporary custody of the Department. The older two, E.L. and S.L., were placed with a maternal aunt and her husband; C.L. and J.L. were placed together with nonrelative foster parents.

{¶5} In March 2021, after multiple extensions of temporary custody, the Department moved for permanent custody of the children. A two-day trial was held in May 2021, during which testimony was presented by the following Department witnesses: an expert in the field of toxicology, specialized in drug testing, who testified that mother's drug screens in November 2020 and April 2021 were positive for illicit methamphetamine and the amphetamine metabolite; an expert, clinician, and consultant in the field of infant

2

and early childhood mental health, who conducted an evaluation of the children and a parenting assessment of the family in March 2020; an educator from Ohio State University Extension, who provided virtual parenting classes and individual parenting instruction in the fall of 2020; the maternal aunt and foster parent of E.L. and S.L.; the foster mother of C.L. and J.L.; and the family's ongoing social worker, responsible for writing the case plan and ensuring the parents' compliance. Both parents were present with individual counsel, but only appellant testified. The children's guardian ad litem submitted her report and recommendation, which is in support of the Department's permanent custody motion as to all four children.

{¶6} Following the trial, the court terminated the parental rights of both parents and granted permanent custody of all four children to the Department. Appellant advances one assignment of error from the written decisions:

> The trial court erred in permanently divesting Defendant-Appellant of his parental rights, as this was against the manifest weight of the evidence.

{¶7} In a manifest weight challenge, "'[w]eight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other."'" (Emphasis deleted.) *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 12, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), quoting *Black's Law Dictionary* 1594 (6th Ed.1990).

{¶8} "'An appellate court will not reverse a juvenile court's termination of parental rights and award of permanent custody to an agency if the judgment is supported by clear and convincing evidence.'" *In re. T.B.*, 11th Dist. Lake No. 2008-L-055, 2008-Ohio-4415,

3

¶ 36, quoting *In re Lambert*, 11th Dist. Geauga No. 2007-G-2751, 2007-Ohio-2857, ¶ 75. The clear and convincing evidence standard requires that the evidence "'produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.'" *In re J.S.E.,* 11th Dist. Portage Nos. 2009-P-0091 & 2009-P-0094, 2010-Ohio-2412, ¶ 25, quoting *In re T.B.* at ¶ 35. "Once the clear and convincing standard has been met to the satisfaction of the [trial] court, the reviewing court must examine the record and determine if the trier of fact had sufficient evidence before it to satisfy this burden of proof. * * * The determination of the [trial] court should not be overturned unless it is unsupported by clear and convincing evidence." *In re Holcomb*, 18 Ohio St.3d 361, 368, 481 N.E.2d 613 (1985).

{¶9} "At the outset, we recognize that parents have a constitutionally protected fundamental interest in the care, custody, and management of their children. The Supreme Court of Ohio has recognized the essential and basic rights of a parent to raise his or her child. These rights, however, are not absolute. A parent's natural rights are always subject to the ultimate welfare of the child." (Internal citations omitted.) *In re C.P.*, 187 Ohio App.3d 246, 2010-Ohio-346, 931 N.E.2d 1105, ¶ 11 (10th Dist.).

{¶10} Before a juvenile court can terminate parental rights and award permanent custody to the requesting agency, the court must conduct a hearing and apply a two-pronged analysis. First, the court must find by clear and convincing evidence that one or more of the factors in R.C. 2151.414(B)(1)(a)-(e) applies. The factor applicable here, which is not in dispute, is that the children have been in the custody of the Department for 12 or more months of a consecutive 22-month period. R.C. 2151.414(B)(1)(d). Second, the trial court must find by clear and convincing evidence that granting

4

Case Nos. 2021-L-066, 2021-L-067, 2021-L-068, 2021-L-069

permanent custody of the child to the agency is in the best interest of the child upon considering all relevant factors, including those in R.C. 2151.414(D). R.C. 2151.414(B)(1).

{¶11} Appellant presents three issues for review. First, appellant contends the trial court failed to consider that he had completed the case plan that the Department had mandated he complete. The evidence does indicate that appellant made individual progress under the case plan—e.g., he completed a mental health assessment and a drug and alcohol evaluation, underwent random drug screens with negative results, completed a parenting course, and attended counseling every couple of months. Although appellant's level of compliance with the case plan was not the focus of the trial court's decision, the record indicates the court did consider these facts. Nevertheless, the evidence supports a conclusion that appellant's compliance was inadequate, under the totality of the circumstances, to avoid termination of his parental rights. There was testimony that appellant struggled with two-hour supervised visits, was unable to effectively implement learned parenting skills, and missed some visits (approximately 10 to 13), including the entire month of March 2021, without first notifying the Department. Additionally, when viewed as a whole, the record reveals that the children's mother—to whom appellant is married and with whom appellant lives—has largely been unable to care for herself and others since her stroke. Appellant has been her primary caregiver. She was also discharged from mental health and drug and alcohol services due to her inability to function in that environment. Finally, she tested positive for illicit methamphetamine as recently as April 2021. The trial court found that neither parent is currently able to care for the children nor will they be able to do so within a reasonable

5

time, and these findings are supported by clear and convincing evidence. Appellant's first issue for review is not well taken.

{¶12} Next, appellant contends the trial court failed to consider that the Department did not make reasonable attempts at reunification prior to moving for permanent custody. *See* R.C. 2151.419(A)(1) (providing, in part, that "[i]n determining whether reasonable efforts were made, the child's health and safety shall be paramount").

{¶13} The record contradicts appellant's contention. Specifically, the trial court found, pursuant to R.C. 2151.419(A)(1):

> The Department has made reasonable efforts to prevent the removal of the [children] from the [children's] home, to eliminate the continued removal from the [children's] home, or to make it possible for the [children] to return safely home. Specifically, a case plan was prepared by the Department and adopted by the Court for the family. Mother and Father's case plan goals include obtaining a drug and alcohol assessment and following all recommendations, obtaining mental health assessments and follow all recommendations, participating in any early intervention or medical appointments for [C.L. and J.L.], as recommended, participating in family counseling as recommended for [E.L. and S.L.] and cooperating with the Department and the Guardian ad Litem.
>
> Mother suffers from significant health problems which has made Father her primary caregiver. The Department engaged the services of an early childhood mental health consultant and facilitated parenting classes to address Mother and Father's parenting needs. Despite these reasonable efforts made toward reunification, the Department cannot reunify the [children] with Mother and Father.

{¶14} These findings are consistent with the record and supported by clear and convincing evidence presented at trial. For instance, because the initial visits were observed to be chaotic and disorganized and the mother very distressed and emotional, the Department engaged a clinician to conduct a parenting assessment and provide recommendations to the family. The Department followed up those recommendations by

6

providing virtual parenting classes and one-on-one parenting instruction with an educator. When it became difficult for the parents to attend visits at the Department, the social worker coordinated them at a park near the parents' home. When transportation became an issue because appellant sold his vehicle, the social worker obtained and facilitated transportation for the parents. Despite all of these efforts, the social worker testified that the visits never progressed to unsupervised because the parents' ability to handle two-hour supervised visits did not progress. Accordingly, appellant's second issue for review is not well taken.

{¶15} Finally, appellant challenges the trial court's findings under the best interest factors enumerated in R.C. 2151.414(D)(1):

> (a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
>
> (b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
>
> (c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state;
>
> (d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency[.]
>
> (e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

7

Case Nos. 2021-L-066, 2021-L-067, 2021-L-068, 2021-L-069

For the purposes of division (D)(1) of this section, a child shall be considered to have entered the temporary custody of an agency on the earlier of the date the child is adjudicated pursuant to section 2151.28 of the Revised Code or the date that is sixty days after the removal of the child from home.

{¶16} The trial court individually addressed each of these best interest factors, made findings under each, and concluded under the clear and convincing standard that permanent custody to the Department is in the children's best interests.

{¶17} As to the custodial history of the children, the trial court found that they have been in the temporary custody of the Department since March 5, 2019. Considering the interaction and interrelationship of the children with others, the trial court found that the children have strong bonds with their current caregivers, where they have been placed for almost the entirety of this case. C.L. and J.L. reside in one home, while S.L. and E.L. reside with their aunt and uncle. Both sets of caregivers encourage contact between the siblings on a consistent basis. The court further found that the children "also have a relationship with their parents."

{¶18} Appellant notes that he has other children over the age of eighteen from a prior relationship whom he parented without issue. However true this may be, the findings made by the trial court are consistent with the evidence presented at the hearing regarding the best interests of appellant's minor children.

{¶19} The caregivers both testified that they have wonderful relationships with the children, who are thriving, attend therapy, and have improved in many ways. For example, at the time of their initial placement, E.L. was very "parentified," meaning she was acting as a parent to her siblings and, at times, to her mother. In addition, S.L. was experiencing behavioral issues and failing the first grade; and C.L. and J.L. both struggled

8

with speech delays. All of these issues, and others, have significantly improved. The children all see each other almost every week, and the caregivers alternate sleepovers once or twice a month. Each testified to their intention to adopt the children currently in their care if permanent custody is granted, the importance of maintaining the sibling relationship between all four, and a willingness to maintain contact with the biological parents if safe for the children.

{¶20} The family's ongoing social worker testified that the children have a strong bond with their parents, but she believes that being placed in the permanent custody of the Department is in the children's best interests. She has significant concerns about the substance abuse going on in the home; the parents' ability to parent four children; the mother's physical and mental limitations with the children; and appellant's level of stress and anxiety caring for mother, even without the children at home.

{¶21} Additionally, the clinician who conducted the parenting assessment testified that, in February 2020, he observed a supervised family visit at the Department, reviewed a videotaped family visit, interviewed both parents, and visited the children in their foster homes. Using the Parent-Infant Relationship Global Assessment Score ("PIR-GAS"), he assessed the paternal relationship as "disturbed," meaning "the adaptive qualities of [the] relationship are beginning to be overshadowed by problematic features. Although not deeply entrenched, dysfunctional patterns appear more than transient. Developmental progress can still proceed but may be temporarily impaired." He opined that appellant had difficulty reading the cues of the children, following their lead, and effectively disciplining them. The clinician also assessed the maternal relationship as having a lack of "synchronicity" and "distressed," meaning the "parent and child maintain some flexibility

9

and adaptive qualities, but conflict may spread across multiple domains of functioning, and resolution is difficult. The developmental progress of the dyad seems likely to falter if the pattern does not improve." He opined that much of the mother's difficulty interacting with the children may be related to her stroke.

{¶22} As pertains to the wishes of the children, the court found that S.L. and E.L. have expressed their wishes directly to the guardian ad litem and Department staff that they would like to remain in their current placement with their aunt and uncle. Due to their young age, the trial court found that C.L. and J.L. are unable to understand permanent custody and do not have the skills to communicate their thoughts or feelings. The guardian ad litem recommended that granting permanent custody to the Department is in the best interests of all four children and that this recommendation is not in conflict with the children's wishes. Appellant responds that at least two of the children wish to return home, citing his own testimony that at every visit the children "constantly are saying, 'When are we coming home? When is this going to end?'" Nothing in the record indicates, however, that the children repeatedly and consistently expressed a desire for placement that was inconsistent with the guardian ad litem's recommendation at the time of the permanent custody hearing.

{¶23} As to their need for a legally secure permanent placement, the trial court found that the children are too young to care for themselves or keep themselves safe and that this type of placement cannot be achieved without granting permanent custody to the Department. Appellant responds that prior to their removal, the family lived in a three-bedroom, two-bathroom home, where he has resided uninterrupted for over twenty years. In light of the present circumstances, the children's prior living situation does not speak

10

Case Nos. 2021-L-066, 2021-L-067, 2021-L-068, 2021-L-069

to whether appellant can now provide them with a safe and secure living environment. The record supports the conclusion that the children cannot be reunited with their parents for numerous reasons, not the least of which is the fact that their mother, married to and living with appellant, tested positive for illicit methamphetamine as recently as April 2021. Even appellant agreed that the children should not be returned to a home where someone is using methamphetamine.

{¶24} The trial court's findings under each of the best interest factors are supported by clear and convincing evidence. Appellant's third issue is not well taken.

{¶25} We acknowledge and appreciate appellant's testimony that he did not intend to attempt suicide; that his wife has significantly improved since the early days after her stroke; that he has never knowingly refused a mandate of his case plan; that he believes a follow-up assessment of his parenting skills should have been conducted; and that he loves the children and very much wants them back home. Nevertheless, in this circumstance, appellant's individual progress and desire to attain reunification cannot be viewed in a vacuum. "While a parent undeniably has certain rights concerning his or her child, the focus of a permanent custody hearing and decision is not the parent's rights but *the child's best interests*." (Emphasis added.) *In re West*, 4th Dist. Athens No. 05CA4, 2005-Ohio-2977, ¶ 49. Here, considering the children's best interests in light of *all* relevant factors, the greater amount of credible evidence supports a grant of permanent custody of all four children to the Department. The trial court's decision is, therefore, not against the manifest weight of the evidence.

{¶26} Appellant's sole assigned error lacks merit.

Case Nos. 2021-L-066, 2021-L-067, 2021-L-068, 2021-L-069

{¶27} The judgments of the Lake County Court of Common Pleas, Juvenile Division, are affirmed.


MARY JANE TRAPP, P.J.,

JOHN J. EKLUND, J.,

concur.

Case Nos. 2021-L-066, 2021-L-067, 2021-L-068, 2021-L-069