[Cite as *In re L.C.*, 2024-Ohio-147.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## TRUMBULL COUNTY

IN THE MATTER OF:

L.C. AND R.C.,
DEPENDENT CHILDREN

CASE NO. 2023-T-0058

Civil Appeal from the
Court of Common Pleas,
Juvenile Division

Trial Court No. 2021 CH 00044

**O P I N I O N**

Decided: January 16, 2024
Judgment: Affirmed

*Judith M. Kowalski*, 333 Babbitt Road, Suite 323, Euclid, OH 44123 (For Appellant, Brayasha Clark).

*Tammy S. Richardson*, Children Services Board of Trumbull County, 2282 Reeves Road, N.E., Warren, OH 44483 (For Appellee, Trumbull County Children Services Board).

*Carol A. Sopkovich*, Martin F. White Co., LPA, 156 Park Avenue, N.E., Warren, OH 44481 (Guardian ad litem).

EUGENE A. LUCCI, P.J.

{¶1} Appellant, Brayasha Clark ("Mother"), appeals the judgment awarding appellee, Trumbull County Children Services Board ("CSB"), permanent custody of her children R.C. and L.C. We affirm.

{¶2} Shortly after their births, Trumbull County CSB filed complaints in the trial court alleging L.C., born August 27, 2021, was dependent and that R.C., born October 3, 2022, was abused and dependent. During the course of the proceedings, the court

granted temporary custody of both children to Trumbull County CSB, adjudicated L.C. as dependent, adjudicated R.C. as dependent and abused, and appointed a guardian ad litem ("GAL") for the children. The putative father of the children did not appear in the proceedings, and paternity was not established. In 2023, Trumbull County CSB filed a motion for permanent custody of the children. A hearing on this motion was thereafter held before a magistrate.

{¶3} After the hearing, the magistrate issued a decision determining that permanent custody of the children should be granted to Trumbull County CSB. Mother filed no objections to the magistrate's decision. Subsequently, the trial court adopted the magistrate's decision and independently entered judgment granting Trumbull County CSB permanent custody of the children.

{¶4} In her first assigned error, Mother argues:

{¶5} "Appellant was deprived of the effective assistance of counsel at the trial level by reason of her counsel's failure to file objections to the magistrate's decision granting permanent custody."

{¶6} "'At the outset, we recognize that parents have a constitutionally protected fundamental interest in the care, custody, and management of their children.'" *In re J.L.*, 11th Dist. Lake Nos. 2021-L-066, 2021-L-068, 2021-L-069, 2021-Ohio-3977, ¶ 9, quoting *In re C.P.*, 187 Ohio App.3d 246, 2010-Ohio-346, 931 N.E.2d 1105, ¶ 11 (10th Dist.). "'The Supreme Court of Ohio has recognized the essential and basic rights of a parent to raise his or her child.'" *J.L.* at ¶ 9, quoting *C.P.* at ¶ 11. "'These rights, however, are not absolute. A parent's natural rights are always subject to the ultimate welfare of the child.'" *J.L.* at ¶ 9, quoting *C.P.* at ¶ 11. "[W]hen the state initiates a permanent custody

2

proceeding, parents must be provided with fundamentally fair procedures in accordance with the due process provisions of the Fourteenth Amendment to the United States Constitution, and Section 16, Article I of the Ohio Constitution." *In re Roque*, 11th Dist. Trumbull No. 2005-T-0138, 2006-Ohio-7007, ¶ 7, citing *In re Sheffey*, 167 Ohio App.3d 141, 854 N.E.2d 508, 2006-Ohio-619, ¶ 21 (11th Dist.). "This includes effective assistance of counsel." *Roque* at ¶ 7, citing *State ex rel. Heller v. Miller*, 61 Ohio St.2d 6, 399 N.E.2d 66 (1980), paragraph two of the syllabus; *In re Ridenour*, 11th Dist. Lake Nos. 2004-L-168, 2004-L-169, 2004-L-170, 2005-Ohio-349, ¶ 9; and *In re Brewster*, 11th Dist. No. 91-P-2365, 1994 WL 316371 (Mar. 25, 1994). Accordingly, a parent may challenge the effective assistance of counsel in a proceeding terminating parental rights. *In re Ridenour* at ¶ 9.

{¶7} "When presented with ineffective assistance of counsel claims in proceedings to terminate parental rights, Ohio courts apply the two-prong *Strickland* test." *Roque* at ¶ 11, citing *Ridenour* at ¶ 9; *see also Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Pursuant thereto, in order to prevail on a claim of ineffective assistance of counsel, "a defendant must prove that counsel's performance was deficient and that the defendant was prejudiced by counsel's deficient performance." *State v. Davis*, 159 Ohio St.3d 31, 2020-Ohio-309, 146 N.E.3d 560, ¶ 10, citing *State v. Bradley*, 42 Ohio St.3d 136, 141-142, 538 N.E.2d 373 (1989); and *Strickland* at 687. "Thus, the defendant must demonstrate that counsel's performance fell below an objective standard of reasonableness and that there exists a reasonable probability that, but for counsel's error, the result of the proceeding would have been different." *Davis* at ¶ 10, citing *Bradley* at paragraphs two and three of the syllabus.

3

{¶8}     Here, Mother argues that her trial counsel was ineffective for failing to file objections to the magistrate's decision awarding permanent custody to Trumbull County CSB.     Generally, "[t]he sufficiency-of-the-evidence and/or manifest-weight-of-the-evidence standards of review are the proper appellate standards of review of a juvenile court's permanent-custody determination, as appropriate depending on the nature of the arguments that are presented by the parties." *In re Z.C.*, Ohio Supreme Court Slip Opinion No. 2023-Ohio-4703, ¶ 11 (Dec. 27, 2023).   However, here, counsel's failure to file objections to the magistrate's decision has limited Mother's challenges to the judgment under the Juvenile Rules.

{¶9}     Juv.R. 40(D) governs the procedure to object to a magistrate's decision.  "If no timely objections are filed, the court may adopt a magistrate's decision, unless it determines that there is an error of law or other defect evident on the face of the magistrate's decision."  Juv.R. 40(D)(4)(c).  Further, pursuant to Juv.R. 40(D)(3)(b)(iv), "[e]xcept for a claim of plain error, a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Juv.R. 40(D)(3)(a)(ii), unless the party has objected to that finding or conclusion as required by Juv.R. 40(D)(3)(b)."  However, claims of ineffective assistance of counsel are not forfeited by failure to object to a magistrate's decision, and the reviewing court may consider the transcript of proceedings before the magistrate when determining whether counsel was ineffective.  *In re S.N.*, 1st Dist. Hamilton Nos. C-190151, C-190152, 2020-Ohio-3958, ¶ 20.

{¶10} In support of her ineffective assistance claim, Mother appears to argue that trial counsel was deficient for failing to object to certain findings made by the magistrate

4

Case No. 2023-T-0058

and for failing to object on the basis that the evidence weighed against granting permanent custody of the children to Trumbull County CSB. R.C. 2151.414(B)(1) provides that a court may grant permanent custody of a child to a movant if it finds by clear and convincing evidence that (1) one or more of the factors in R.C. 2151.414(B)(1)(a)-(e) applies, and (2) granting permanent custody of the child to the movant is in the best interest of the child.

{¶11} The factors contained in R.C. 2151.414(B)(1) include, as relevant here:

(a) The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period if, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.

(b) The child is abandoned.

* * *

(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state.

{¶12} R.C. 2151.414(D) provides:

5

(1) In determining the best interest of a child at a hearing held pursuant to division (A) of this section * * * the court shall consider all relevant factors, including, but not limited to, the following:

(a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

(b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

(c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state;

(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

{¶13} R.C. 2151.414(E) provides, in relevant part:

In determining at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either

6

Case No. 2023-T-0058

parent within a reasonable time or should not be placed with either parent:

(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.

* * *

(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;

* * *

(11) The parent has had parental rights involuntarily terminated with respect to a sibling of the child pursuant to this section or section 2151.353 or 2151.415 of the Revised Code, or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to those sections, and the parent has failed to provide clear and convincing evidence to prove that, notwithstanding the prior termination, the parent can provide a legally secure permanent placement and adequate care for the health, welfare, and safety of the child.

* * *

(16) Any other factor the court considers relevant.

{¶14} Here, on the first day of the permanent custody hearing, held on May 8, 2023, Trumbull County CSB presented the testimony of its caseworkers who had been

7

involved in the present case and the testimony of a caseworker from Mahoning County CSB who had been involved in cases involving Mother's older children.

{¶15} Testimony from the caseworkers indicated that, as a child, Mother experienced significant trauma and ultimately entered the foster care system. Mother suffered from mental health issues during adolescence that persisted into adulthood. Prior to emancipating, Mother gave birth to her first two children, who were placed in the custody of paternal relatives. Mahoning County CSB became involved with Mother's six subsequently born children beginning in 2018, when police removed the children from Mother's home after responding to a report that Mother had assaulted the father of three of her children with a brick. Mother's case plan goals included addressing housing, parenting, and mental health concerns, completing random drug testing, and resolving criminal charges. Mother progressed on her case plan, and, in 2020, the children were returned to Mother under a protective supervision order. However, five months later, two incidents occurred where Mother left the children, the oldest being seven years old, at home unsupervised and police were called. After the second of these incidents, in February 2021, the children, who appeared abused and neglected, were removed by officers. Mother was charged with and convicted of child endangerment and sentenced to five years of nonreporting probation.

{¶16} While custody proceedings were pending in Mahoning County, Mother moved to Trumbull County, where she gave birth to the children at issue in this case. Trumbull County CSB obtained temporary custody of the children shortly after their births. Trumbull County CSB reviewed information gathered during the Mahoning County cases to refine a case plan for Mother. Mother's case plan goals included: engaging in mental

8

health counseling; completing a psychological assessment; completing a substance abuse assessment; maintaining housing with working utilities; maintaining verifiable employment; refraining from engaging in criminal activity; remaining compliant with probation; signing releases; and complying with all recommendations from assessments.

{¶17} With respect to her mental health, Mother consistently engaged in counseling twice per month with a therapist at Coleman Professional Services ("Coleman"). However, Mother's mental health was concerning to the caseworkers due to certain periods of instability. In January 2022, Mother was involuntarily committed to Generations Behavioral Health Hospital ("Generations") after expressing "religious delusions" during which she referred to herself as the voice of God and the next Jesus Christ. En route to the hospital, Mother jumped from a moving vehicle. On her release from Generations, Mother was prescribed the medication Abilify for treatment of her mental health conditions. However, Mother delayed filling her prescription and then discontinued use of the medication when she became pregnant with R.C. In March 2023, Coleman reached out to CSB indicating that Mother was experiencing a mental health crisis. The next day, Mother arrived at a visitation for the children at issue in this case, and she began yelling about sovereign citizenship, indicated that she had a "declaration," and expressed that she would be the first black president of the United States. This behavior persisted for approximately 30 to 45 minutes at the agency before Mother left, and the visit did not occur. The following weekend, Mother crashed her vehicle into a tree. When police arrived, Mother appeared delusional, and Mother was again involuntarily committed. After this commitment, Mother was again prescribed medication

9

to assist in treating her mental health conditions. Mother had remained on the medication, and it appeared to be assisting her.

{¶18} In connection with the Trumbull County CSB case, Mother attended a psychological evaluation, but she refused to speak about the children during the evaluation, and she spent some time during the evaluation pretending to sleep. The evaluator recommended that Mother engage in trauma therapy known as eye movement desensitization redirection ("EMDR"). To CSB's knowledge, Mother had not engaged in EMDR.

{¶19} Two caseworkers testified as to certain incidents relative to Mother's verbal aggression and/or lack of impulse control. The Mahoning County CSB caseworker and one of the Trumbull County CSB caseworkers indicated that Mother had verbally threatened them. The Mahoning County caseworker further testified that, at one visitation, Mother became disruptive in the waiting room by insisting on speaking with an agency employee who was unavailable. In addition, a Trumbull County caseworker testified that there were occasions when Mother would make aggressive remarks about the staff during the visits with the children at issue in this case.

{¶20} With respect to substance abuse, the caseworkers indicated that Mother had reported that she had a medical marijuana card, but Mother admitted to purchasing marijuana off the street because the dispensary was too expensive. Mother consistently tested positive for marijuana at her drug screens. In January 2022, she tested positive for a particular opioid that she was not prescribed, and, in February 2022, Mother tested positive for amphetamines. Further, when R.C. was born, both R.C. and Mother tested positive for cocaine, despite Mother's denial of having used cocaine. Caseworkers

10

expressed concerns with Mother purchasing marijuana off the street, which might not be distributed in the appropriate dosage and could be adulterated. Although Mother did not attend a substance abuse assessment scheduled through the Mahoning County CSB, Mother did attend a substance abuse assessment scheduled by Trumbull County CSB. After the substance abuse assessment, it was recommended that Mother complete an in-patient program, which she refused, or an intensive out-patient program, which she also refused.

{¶21} With respect to her parenting abilities, Mother complied with her case plans in completing parenting classes. However, Mother was unable to demonstrate appropriate parenting skills during her supervised visitations with the children at issue in the Mahoning County case. During visits, Mother would gravitate to the youngest child present, leaving the oldest child to take charge of the remaining children. Agency aides had to intervene numerous times due to the chaos of the visitations. On cross-examination, the Mahoning County CSB caseworker affirmed that one-on-one visitation with the children was never discussed as an option. Of Mother's six children with whom Mahoning County CSB was involved, three had been placed in the legal custody of their father, two were in the permanent custody of Mahoning County CSB, and one was in the temporary custody of Mahoning County CSB, with a permanent custody hearing scheduled.

{¶22} With respect to the children at issue here, Mother's visitations generally went well; although Mother focused most of her attention on R.C. In addition, one Trumbull County caseworker indicated that, at certain visitations, Mother failed to demonstrate an understanding of the developmental needs and appropriate parenting of

11

Case No. 2023-T-0058

the children. For example, Mother had left R.C. on the changing table unattended and had expected L.C. to follow her verbal directions, although he was only approximately one year old at the time.

{¶23} In regard to other case plan goals, Mother had established housing in April 2022, and she had maintained it since that time. Mother had been employed at different locations during CSB involvement, but she was unemployed as of the first day of hearing on the permanent custody motion in the present case. Mother had her own car, but she did not have a valid driver's license. Mother was compliant with attending her mental health counseling on a biweekly basis at Coleman, and Mother's therapist had reported that Mother was engaged and responsive during the sessions. Mother was compliant with her probation. Mother had refused a parental assessment recommended in the Trumbull County case, but a caseworker acknowledged that the assessment was to be scheduled with a doctor located in Canton, Ohio, whose office is approximately 40 to 45 minutes away.

{¶24} With respect to whether the children at issue here could be returned to Mother's care within a reasonable time, one caseworker from Trumbull County CSB indicated that, although Mother had made progress on some of her case plan goals, she was concerned for the safety R.C. and L.C. if they were returned to Mother's care due to Mother's mental instability, substance use, and failure to understand the developmental needs and abilities of the children. Accordingly, the caseworker did not believe that the children could be returned to Mother's care within a reasonable time.

{¶25} The other Trumbull County CSB caseworker, who had been assigned Mother's case in December 2022, testified that, although she had no concerns with

Mother's interactions with the children at the visits she had observed, she had concerns regarding Mother's mental health due to Mother's unstable behavior in March 2023, just two months prior to the hearing. The caseworker was primarily concerned that if the children were returned to Mother's custody, and Mother ceased taking her medication, she may experience a similar episode of instability while caring for the children. Accordingly, the caseworker did not believe that the children could be reunified with Mother within a reasonable time and recommended that the children be placed in the permanent custody of CSB.

{¶26} On the second day of the permanent custody hearing, held on June 21, 2023, Trumbull County CSB offered exhibits which were admitted into evidence without objection. First, Trumbull County CSB submitted a decision of the Seventh District Court of Appeals, affirming the Mahoning County Juvenile Court's decision to place two of Mother's children in the permanent custody of Mahoning County CSB. The next exhibit consisted of a judgment entry issued by the Mahoning County Juvenile Court from which the appeal was brought. Further, Trumbull County CSB submitted the mental health evaluation it had conducted, and this exhibit was admitted by stipulation.

{¶27} After admission of the exhibits, Mother, mother's counselor, and the GAL testified.

{¶28} Mother addressed certain testimony elicited during the first day of the permanent custody hearing. Mother testified that she had just obtained employment in a factory. Mother's testimony then focused on the Mahoning County CSB proceedings, which, as previously set forth, pertain to children not at issue in the present case. First, Mother denied being the aggressor in the domestic violence incident alleged by the

13

Mahoning County CSB caseworker during her testimony. After Mahoning County CSB removed the children at issue in that case from her custody, Mother complied with her case plan goals of maintaining stable housing, drug screening, parenting classes, and counseling, and the children were returned to her. However, Mother felt as though the system set her up for failure, because she received no resources or assistance when the children were returned to her. Mother admitted to leaving the children home alone, resulting in the children's removal a second time by Mahoning County CSB. Mother then acknowledged the "chaotic" nature of her visits with the children in Mahoning County. Mother explained that having all of the children present at the same time in a small room was not conducive to spending quality time with them.

{¶29} With regard to Mother experiencing religious "delusions," she explained that she is a Jehovah Witness, and she could not recall what she had said during these episodes other than that she was a prophet of Jehovah, and she would "scream that God got me and my kids back." (Sic.) Mother testified that she did not really believe that she was Jesus Christ. Although Mother denied being mentally unstable, she acknowledged that the issues with her children were affecting her emotional and mental well-being.

{¶30} With respect to the mental health evaluation performed by Trumbull County CSB, Mother explained that she did not attempt to sleep during the mental health evaluation but was instead very sad to speak about her children. She explained that she was uncomfortable with the evaluation because she had already done a mental health evaluation through Coleman, and she felt that the agency was attempting to make the process more difficult for her. She also believed that the system was racially biased against black people, and she did not believe that the majority of people she had

14

encountered during this process, who were white, had her children's best interests as a priority. Mother further maintained that Trumbull County CSB was using her past issues from the Mahoning County case against her and disregarding the progress that she had made with parenting classes, drug and alcohol assessments, drug screens, counseling, housing, and employment.

{¶31} With respect to her current mental health treatment, Mother explained that she has been diagnosed with bipolar disorder, PTSD, severe depression, and anxiety. Regarding her involuntary commitment in January 2022, Mother acknowledged that she was having a mental breakdown at the time and was talking about "Jehovah and sovereignty, probably talking crazy," when the police arrived to perform a welfare check. With regard to the March 2023 auto accident, Mother maintained that she was driving herself to the hospital to get help because she was having a mental breakdown. On the way to the hospital, Mother crashed into a tree. On cross-examination, Mother clarified that the car accident was likely a result of bad brakes, and she had no intention to harm herself. Mother maintained that she has continued to attend counseling through Coleman, and she has continued to take the medication prescribed by Coleman following the March 2023 incident.

{¶32} With respect to her marijuana use, Mother testified that she has a medical marijuana card, and she currently purchases marijuana through a dispensary. Mother acknowledged that, during an evaluation, she reported that she smoked "six to eight blunts a day." On cross-examination, Mother indicated that she now smokes "probably like three or four" blunts per day. Although Mother testified that she now purchases

15

marijuana from a dispensary, it was not clear from her testimony as to whether Mother continued to purchase any marijuana off the street.

{¶33} In regard to the alleged threats made to the caseworkers, Mother did not recall threatening the Trumbull County CSB caseworker, but Mother acknowledged that she "probably did cuss her out." Mother recalled that she had "got into it" with the Mahoning County CSB caseworker after Mother learned that the caseworker had called her counselor to inquire as to the counselor's race and because her children were being given medication without her approval.

{¶34} Following Mother's testimony, a therapist from Coleman testified that Mother has been her client since May 2021. The therapist indicated that Mother has been diagnosed with major depression, anxiety, as well as generalized anxiety, and she is bipolar with psychotic features at times. Regarding the psychotic features, the therapist explained that Mother had been hospitalized two or three times due to religious or ideological statements such as her being "the female God" and maintaining that she was going to be the "first woman President." The therapist believed these episodes likely occurred in connection with a triggering event such as a court proceeding, because Mother did not normally display psychotic features. The therapist recalled a telehealth session in spring 2023, during which Mother seemed to be "very high strung" and stated that CSB did not know that she was God and then continued making such statements before hanging up the call, prompting the therapist to cause her agency to initiate a wellness check.

{¶35} The therapist testified that she believed Mother was honest with her in therapy. The therapist indicated that Mother is supposed to be a biweekly client, and she

16

tries to provide sessions to Mother on at least a monthly basis. She believed Mother could benefit from weekly sessions; however, the therapist was unable to see Mother weekly due to the therapist's commitments to other clients. The therapist explained that she and Mother review methods of healthy, assertive communication at the sessions, because Mother has difficulty with impulse control and regulating her emotions; although Mother had reported that her current medications were assisting in her feeling better and clearer minded.

{¶36} On cross-examination, the therapist testified that she believed Mother would benefit from EMDR therapy to address her childhood trauma. The therapist indicated that she had discussed EMDR therapy with Mother, and Mother was willing to engage in that therapy, but the only counselors that performed this therapy in the area had significant waiting lists, and mental health resources in Trumbull County are somewhat strained. The therapist acknowledged that she had never viewed Mother with her children and was unable to speak about Mother's parenting abilities. The therapist further indicated that Mother's lack of impulse control is apparent when conversations involve CSB, and the therapist believed that Mother's issues with CSB were fueled by her own experiences as a child.

{¶37} Last, the GAL testified that she recommended permanent custody be granted to CSB. The GAL based her opinion on the severity of Mother's mental health issues that had resulted in her involuntary commitment only a couple of months prior to the hearing. The GAL acknowledged that she had observed only one visit between Mother, L.C., and R.C., to which Mother arrived late. During the hour that the GAL observed the visit, Mother continuously fed R.C., and she paid little attention to L.C.

17

When Mother did interact with L.C., she entirely ignored R.C. Thus, the GAL opined that Mother had difficulty handling both children at the same time. Further, the GAL referred to the testimony indicating that Mother may benefit from EMDR therapy, but such therapy could take years to prove beneficial, and the GAL did not believe the children's best interests would be served in waiting such a significant period for potential reunification.

{¶38} In the magistrate's decision, with respect to the R.C. 2151.414(B) factors, the magistrate determined that R.C. could not be placed with either parent within a reasonable time and had been abandoned by his biological father and family. The magistrate concluded that L.C. had been in the temporary custody of a public services agency twelve or more months since adjudication out of the past twenty-two-month period and also had been abandoned by his biological father and family.

{¶39} Pursuant to R.C. 2151.414(E)(1), the magistrate found that, following the placement of the children outside of Mother's home and notwithstanding CSB's efforts, Mother had continuously and repeatedly failed to remedy the problems that caused the children's removal. Mother had not assisted in determining paternity of the children, and no male had appeared to request DNA testing to establish paternity or seek custody. The magistrate determined that Mother failed to engage in the CSB case plan to create a safe placement for the children because (1) she had not stopped abusing drugs, and, as of the date of her assessment, she had not stopped purchasing marijuana off the street and smoked six to eight blunts per day; (2) Mother had not complied with drug screens when requested; (3) Mother had no driver's license when she was in her car accident in March 2023, and she continues to drive without a license; (4) Mother suffers from unresolved PTSD due to a traumatic childhood experience; (5) Mother can only manage one child at

18

a time; (6) Mother has no impulse regulation; (7) Mother continues to have unresolved issues with substance abuse and mental health and is verbally aggressive; (8) Mother has engaged in counseling with Coleman for two years but has not improved; and (9) "Mother has a pattern of unstable mental health, which affects her ability to parent," and "creates serious safety concerns for the children." The magistrate found that Mother had declined additional services for mental health counseling; a mental health assessment by MEDSOM; treatment for her bipolar disorder, depression, and PTSD; additional parenting classes; and use of a case manager to help her establish basic skills, obtain a driver's license, and engage in community services to maintain independent income and housing. With respect to Mother's need for additional parenting classes, the magistrate stated that Mother "yells [at] and demeans the children during visits."

{¶40} The magistrate further found, pursuant to R.C. 2151.414(E)(4), there existed a "lack of commitment" by Mother because "she has not used offered resources as noted above despite years of offered services by TCCSB and MCCSB over a four (4) year period of time." Further, the magistrate found that Mother "continues to use marijuana bought 'on the street' despite the obvious adulterations in the mix that she is buying and showing up in drug screens."

{¶41} Pursuant to R.C. 2151.414(E)(11), the magistrate noted the "involuntary termination of parental rights in Mahoning County (March 2023) and affirmed on appeal (June 2023)." The magistrate found that, by clear and convincing evidence, the parents had not utilized the services offered to them to address the current problems in their inability to care for the children.

19

Case No. 2023-T-0058

{¶42} Further, the magistrate found that Mother's interaction with the children was poor, and the children needed the opportunity to enjoy being part of a family that would permanently care for them as their children, and termination of Mother's parental rights was the only path that could provide the children with a safe, secure, and permanent home.

{¶43} With respect to R.C. 2151.414(D), the magistrate stated that all factors were considered, and it was in the best interests of the children to grant permanent custody to Trumbull County CSB.

{¶44} Based upon these findings, the magistrate determined that parental rights should be terminated and permanent custody of the children should be granted to CSB. As previously discussed, Mother's counsel did not object to the magistrate's decision, and the trial court adopted the magistrate's decision.

{¶45} On appeal, Mother appears to argue that her trial counsel was deficient for failing to object to the following factual findings. First, Mother challenges the magistrate's findings that she "has terrible PTSD from a childhood experience" that is unresolved and that Mother has no impulse control. Mother cites to her counselor's testimony affirming that Mother was willing to engage in further services that were not presently available in the community and that her current medications were assisting in stabilizing her mental health. However, this testimony does not negate the magistrate's findings. Thus, we cannot say that trial counsel was deficient for failing to object to these findings.

{¶46} Mother next challenges the magistrate's finding that she does not drug screen when requested. Mother maintains that the testimony indicated she had complied with drug screens. We agree with Mother that the testimony at the hearing did not

20

establish that Mother currently fails to comply with drug screens, as this portion of the magistrate's decision appears to rely on a finding made in L.C.'s adjudicatory order. Nonetheless, even had counsel objected to this finding, it is undisputed that Mother consumes marijuana, and Mother testified that she continues to smoke several "blunts" per day. It does not appear that purported noncompliance with drug screening was a decisive factor in the magistrate's decision, and thus, even had counsel objected to the finding, Mother has not established a reasonable probability that the outcome would have been different.

{¶47} Mother next challenges the magistrate's findings that "Mother has spent two years with Coleman for mental health counseling, and has not advanced," and "Mother has a pattern of unstable mental health, which affects her ability to parent, which creates serious safety concerns for the children." Mother further disputes the magistrate's finding that Mother has declined treatment for her mental health diagnoses. In support, Mother cites the testimony of her counselor, who indicated that she would like to see Mother more often, but her caseload does not permit it. Further, the counselor maintained that Mother was amenable to the EMDR treatment that was not presently available, and there were staffing shortages for mental health services in the community. However, again, Mother's challenges, while possibly explaining the magistrate's findings, do not negate the findings. Accordingly, we cannot say trial counsel was deficient for failing to object to these findings.

{¶48} Mother further challenges the magistrate's finding that she yells at and demeans the children during visits. In support, Mother cites the testimony of the second Trumbull County CSB caseworker, who indicated that Mother was appropriate and loving

21

Case No. 2023-T-0058

during visits with the children and she had no concerns about the visits. However, assuming that the magistrate's finding in this regard was error, Mother has not demonstrated a reasonable probability that the outcome would have been different had trial counsel objected.

{¶49} For the reasons discussed above, Mother has not established ineffective assistance of counsel with respect to trial counsel's failure to object to the magistrate's findings. Further, to the extent that Mother argues that trial counsel should have objected on the weight of the evidence establishing that the children's best interests were served by granting permanent custody to Trumbull County CSB, Mother has not advanced an argument as to how the outcome would have been different, and, given the testimony presented at the hearing, we cannot say that there exists a reasonable probability that the trial court would have sustained such an objection.

{¶50} Accordingly, Mother's first assigned error lacks merit.

{¶51} In her second assigned error, Mother maintains:

{¶52} "The Trumbull County Family Court plainly erred by not appointing a guardian ad litem for the mother."

{¶53} R.C. 2151.281(C) provides that "[i]n any proceeding concerning an alleged or adjudicated delinquent, unruly, abused, neglected, or dependent child in which the parent appears to be mentally incompetent or is under eighteen years of age, the court shall appoint a guardian ad litem to protect the interest of that parent." Similarly, Juv.R. 4(B)(3) provides that "[t]he court shall appoint a guardian ad litem to protect the interests of a child or incompetent adult in a juvenile court proceeding when * * * [t]he parent is under eighteen years of age or appears to be mentally incompetent."

22

{¶54} Here, neither Mother nor her attorney requested the trial court to appoint Mother a GAL. Accordingly, Mother has forfeited her challenge in this regard to all but plain error. "In applying the doctrine of plain error in a civil case, reviewing courts must proceed with the utmost caution, limiting the doctrine strictly to those extremely rare civil cases where exceptional circumstances require its application to prevent a manifest miscarriage of justice, and where the error complained of, if left uncorrected, would have a material adverse effect on the character of, and public confidence in, judicial proceedings." (Citations omitted.) *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 121, 679 N.E.2d 1099 (1997). "'In an appropriate case, however, a reviewing court can find plain error when the trial court has failed to appoint a guardian ad litem and such failure results in prejudice to the party in need of a guardian.'" *In re Amber G. & Josie G.*, 6th Dist. Lucas No. L-04-1091, 2004-Ohio-5665, ¶ 8, quoting *In re Holmes*, 8th Dist. Cuyahoga No. 77785, 2001 WL 128007, *3 (Feb. 15, 2001).

{¶55} Here, Mother is over the age of majority, and thus she relies on R.C. 2151.281(C)'s provision for a court to appoint a guardian ad litem where it appears the parent is mentally incompetent. "The statute's language is mandatory and requires the appointment of a guardian ad litem even when it just appears that the parent is less than mentally competent. Indeed, it is the appearance of incompetence and not an actual finding of such that triggers the requirement of an appointment of a guardian ad litem." (Internal citation omitted.) *Holmes* at *2.

{¶56} In her brief, Mother maintains that the trial court committed plain error when if failed to appoint a GAL for her as it is undisputed that Mother suffers from mental health issues, and the magistrate found that she was delusional and involuntarily committed after

23

Case No. 2023-T-0058

her car accident. However, "[m]ental incompetence means that the person cannot understand and participate in the proceedings." *In re C.C.*, 11th Dist. Trumbull Nos. 2016-T-0050, 2016-T-0058, 2016-Ohio-7447, ¶ 122. At the permanent custody hearing, Mother's testimony indicated that she understood and participated in the proceedings. Further, during Mother's counselor's testimony, she indicated that Mother had discussed these proceedings with her, and Mother specifically told her this case pertained to her two babies that were both removed from her at the hospital shortly after their births, and Mother explained to the counselor that this was a permanent custody hearing which could terminate her parental rights.

{¶57} Moreover, Mother was represented by counsel throughout the proceedings. "'Even where a parent's attorney was appointed solely as counsel and not specifically for the dual purpose of serving as guardian ad litem, the parent does not suffer prejudice if counsel safeguards the parent's rights and advocates for reunification in accordance with the parent's wishes.'" *In re K.R.*, 11th Dist. Trumbull No. 2015-T-0008, 2015-Ohio-2819, ¶ 32, quoting *In re M.T.,* 6th Dist. Lucas No. L-09-1197, 2009-Ohio-6674, ¶ 17. Although, in some cases, the role of the GAL and of counsel may conflict, here, Mother was appointed counsel who advocated against CSB's motion for permanent custody, and she was not prejudiced by any failure of the trial court to appoint a GAL on her behalf. *See Amber G.* at ¶ 35-36.

24

{¶58} Accordingly, Mother has failed to establish error, much less plain error, and her second assigned error lacks merit.

{¶59} The judgment is affirmed.


JOHN J. EKLUND, J.,

MARY JANE TRAPP, J.,

concur.

25